WEINSBERG, Respondent, v. ST. LOUIS CORDAGE COMPANY, Appellant.

St. Louis Court of Appeals, February 23, 1909.

1. CORPORATIONS: Employment of Physician: Power to Make Contract. A manufacturing company incorporated under the laws of this State has the implied power to employ a surgeon to perform an operation upon an employee injured in the performance of his duty.

2. ————: ————: ————: Officers. The chief executive officer of a corporation has the emergency power incident to his office to employ a surgeon in such case; it could not be expected that the board of directors should be assembled to execute such power.

3. ————: ————: Express Contract: Prima-Facie Case. In an action by a physician against a corporation for services rendered in performing an operation upon an employee of the corporation, the evidence is examined and held sufficient to justify a finding by the trial court that the defendant directed the plaintiff to treat the patient, intending to pay for the services, and that the plaintiff intended to charge the defendant for such services.

4. **PHYSICIANS: Employment by Stranger: Implied Contract.** Where a physician renders service to one at the mere request of a third person, the law will not, on such request alone, imply a contract on the part of the third person to pay for such services.

5. ————: ————: ————: **Express Contract.** But where the president of a corporation requested a physician to treat an employee of a corporation, who had been injured in the performance of his duty, with the intention that the corporation should pay for such services, and it appeared that the physician intended to charge the corporation for such services, this was proof from which an express contract could be inferred so as to render the corporation liable for such services.

6. ————: ————: ————: ————: **Definitions.** An implied contract arises by operation of law where there is no meeting of minds; an express contract arises where there is meeting of minds, but it may be inferred from circumstances without direct proof, such as where there are services rendered with intention to charge on the one part and intention to pay on the other.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

*Wm. H. & Davis Biggs* for appellant.

The general rule that where a person requests the performance of a service and the request is complied with and the service is performed, the law raises an implied promise to pay the reasonable value of the services, does not obtain where one person requests a physician to perform services for a patient, unless the relation of the person making the request to the patient is such as raises a legal obligation on his part to call in a physician and pay for the services. Meisenbach v. Cooperage Co., 45 Mo. App. 232; Jesserich v. Walruff, 51 Mo. App. 270; Rankin v. Beale, 68 Mo. App. 325. In other jurisdictions: Spelman v. Gold Mining Co. (Mont.), 55 L. R. A. 640; Boyd v. Sappington, 4 Watts (Pa.), 247; Veitch v. Russell, 3 Ad. & Ell. (N. S.) 927; Sellen v. Norman, 4 Car. & P. 80; Crane v. Baudouine,

55 N. Y. 256; Smith v. Watson, 14 Vt. 332; Deane v. Gray Bros. Co., 109 Cal. 433; Railroad v. Taft, 28 Mich. 289; Godshaw v. Struck (Ky.), 51 L. R. A. 668; Dorion v. Jacobson, 113 Ill. App. 564; Holmes v. McAllister (Mich.), 48 L. R. A. 398. Even though it be conceded that an express promise on the part of the defendant to pay plaintiff for his services is not necessary and that the law will imply a promise from the mere request, still the defendant corporation under the evidence could not be bound by the unauthorized act of its president, Crosby, conceding that Crosby requested the services for the company, as he was not shown to have express authority to bind the defendant to pay for medical services given an injured employee, nor did he have implied authority, such matter being entirely without the scope of his authority. Tucker v. Railroad, 54 Mo. 177; Brown v. Railroad, 67 Mo. 122; Mayberry v. Railroad, 75 Mo. 492; Spelman v. Mining Co. (Mont.), 55 L. R. A. 640; Holmes v. McAllister (Mich.), 48 L. R. A. 396; Godshaw v. Struck (Ky.), 51 L. R. A. 668; Harris v. Fitzgerald, 56 Atl. 315; Railroad v. Gray, 22 Florida 356; Railroad v. Hoover, 53 Ark. 377; Railroad v. Morris, 67 Ill. 295; Canney v. Railroad, 63 Cal. 500.

*B. R. Brewer* and *Ben. J. Wolf* for respondent.

(1)   The court complied with defendant's request for special findings of fact, in regard to the question of negligence, when it found that the defendant had introduced no evidence of negligence by the injured and therefore the law would presume that the employee was not negligent. Goff v. St. Louis Transit Co., 98 S. W. 49.   (2)   This was a case in which there was a legal duty owing by the defendant to the injured, to furnish medical aid, and therefore defendant was liable for such services. Reynolds v. Railroad, 90 S. W. 100; Evans v. Mining Co., 100 Mo. App. 670; Hayes v. Railroad, 95 S. W. 299.   (3)   It was in the scope of the

authority of the president of defendant company to employ the plaintiff. Beach on Private Corporations, p. 345; Smith v. Smith, 62 Ill. 496; Freeman v. Bakery Co., 103 S. W. 565.

NORTONI, J.—This is a suit by a physician and surgeon in which he seeks to recover compensation for surgical services rendered in performing an operation upon one of the defendant's employees, at the instance and request of the president of defendant company. A jury being waived, the cause was tried before the court. Plaintiff recovered and the defendant appeals.

It appears the defendant is a corporation engaged in the manufacture of rope and twine. Its mills are located in the city of St. Louis. One Valuka received serious injuries, from which he afterwards died, while in the employ of the defendant in its factory. Upon receiving the injury, Valuka was brought from the defendant's factory into the office of its timekeeper. Defendant's assistant timekeeper ran to the office of the plaintiff, Dr. Weinsberg, which was located near thereto, in search of a surgeon. In response to his request, Dr. Weinsberg immediately waited upon the injured man in the timekeeper's office. Upon a cursory examination of his condition, the doctor inquired of the assistant timekeeper what the company desired he should do with the patient. The doctor said he was very seriously injured and should be taken to a hospital at once, at the same time inquiring whether the company desired he should attend the patient at the City Hospital or at some private institution. The assistant timekeeper replied that he was without authority in that behalf and that he would communicate with Mr. Crosby, the president of the company, for authority. It seems the main office of the defendant company was about a block distant from the office of the timekeeper. The evidence on the part of plaintiff tended to prove

that the assistant timekeeper repaired to the telephone and called for Mr. Crosby, who was then at the main office of the company. Having received an answer by telephone from the main office, the timekeeper informed the person who responded, of the catastrophe, the serious condition of Valuka, the injured man, and that Dr. Weinsberg was then present and desired authority from the company to proceed with the case; inquiring, too, whether the company desired the patient removed to the City Hospital or whether it desired that he should remove him to and attend him at the Lutheran Hospital, which was not far distant from the timekeeper's office. The assistant timekeeper having thus communicated with the person, answering the telephonic request for Mr. Crosby at the main office, instructed plaintiff that Mr. Crosby said he should remove the patient to the Lutheran Hospital and there treat him. Thereupon Dr. Weinsberg requested an ambulance at once, and the assistant timekeeper called one. The patient was then removed to the Lutheran Hospital. The case being one which required assistance, Dr. Weinsberg called in Dr. Amerland to aid him. Dr. Weinsberg and his assistant performed an operation, for which he made a charge of $200. It seems Dr. Bishop was the regularly employed physician of the company. She was not present at the office at the time of the injury, nor did she participate in the operation. It appears Dr. Bishop having had some conversation with Mr. Crosby, the president of the company, about the matter, Mr. Crosby called the following morning at the office of the plaintiff and discussed the case with him. Mr. Crosby suggested that he preferred Dr. Bishop should have charge of the case from that time forward. Dr. Weinsberg replied that so far as his charges were concerned, they would not be increased any by his subsequent attendance; that inasmuch as he had performed the operation, he would like to continue with the case in company with Dr. Bishop. To this Mr. Crosby replied that he had no

reference to the matter of expense but that it was a mere preference of physicians, as Dr. Bishop was the company's regular medical attendant and that Dr. Weinsberg might consult Dr. Bishop and arrange as they saw fit touching the matter of his continuing with the case. It is to be inferred that the doctors made some such an agreement, as it appears they were both present immediately before the patient died. In due course after the operation, Dr. Weinsberg sent a bill of $200 therefor to the defendant company. In response to this, Mr. Crosby wrote him a polite letter, the purport of which was to the effect that his bill had been received and referred to their Dr. Bishop for attention. There is no suggestion in this letter that the charge was either too high or that the company did not owe it. A few days thereafter, Mr. Crosby sent an employee to Dr. Weinsberg's office with instructions to settle with him provided he would reduce the amount of his bill. It was said the bill was too high, and Mr. Crosby said it would be paid if reduced to a reasonable amount. When on the witness stand, Mr. Crosby admitted having received notice of Valuka's injuries prior to his being conveyed to the hospital. His testimony is to the effect that he received the substance of Dr. Weinsberg's message through Mr. McEnnis, secretary of the company, who informed him of Valuka's injuries and of the inquiry for authority to place the injured man in charge of Dr. Weinsberg and convey him to the Lutheran Hospital; and that although he, personally, did not communicate with the timekeeper's office over the telephone, he authorized Mr. McEnnis to give directions which were afterwards received and acted upon by Dr. Weinsberg.

Defendant's counsel having requested the court for a separate finding of facts and conclusions of law, under our statute to that effect, the court found the facts and pronounced its conclusions of law thereon as follows:

"This is a suit brought by the plaintiff, who is a physician and surgeon, to recover the value of his services in performing an operation upon one of defendant's employees, who was hurt while employed by the defendant corporation.

"At the request of defendant's counsel, I make the following finding of facts:

"I find that, on March 1, 1905, the plaintiff performed a surgical operation upon one Frank Valuka, who was injured on that day in the factory of defendant, while employed there by the defendant. There is no testimony showing bow or under what circumstances the employee, Valuka, was injured.

"I find that the main office of the company was a little more than a block away from the factory where the employee was injured. I find that, at the time of the injury, Crosby, the president of the defendant company, was at the main office, and there received notice of the accident and injury soon after it occurred, either by telephone or directly from the secretary of the company, McEnnis, and that a physician other than the regularly employed physician of the company had been called in. I find that immediately after the accident some one connected with the factory went to the office of Dr. Weinsberg and told him of the accident, and requested him to come and attend the injured man. I find that this person had no authority to employ the plaintiff.

"I find that when the plaintiff reached the injured man in the room adjoining the office in the factory he found that his abdomen has been torn open, and that the bowels were protruding from the abdominal cavity, and several ribs had been broken, and the heart and lungs were exposed.

"I find that the plaintiff, after examining the patient, inquired of the clerk in the office whether they wanted the patient sent to the City Hospital or a private hospital and whether they wanted him to attend the case. I find that the clerk thus addressed stated that

he had no authority to determine that matter, and that he would telephone to the main office and ask Mr. Crosby. I find that the plaintiff heard him so telephone.

"I find that after telephoning to Mr. Crosby, the person at the phone told the plaintiff that he had gotten authority from Mr. Crosby to take the case to the hospital and treat the patient. I find that Crosby did telephone to the factory in reference .to sending the patient to a private hospital. I find that after the clerk in the office informed the plaintiff that he had authority from Mr. Crosby to take the patient to a private hospital and treat the case, the plaintiff caused the clerk to telephone for an ambulance, which came, and that the plaintiff accompanied the patient to the hospital and there performed the operation.

"The defendant had a regularly employed female physician and surgeon, but I find that she did not assist in the operation, and the testimony does not show that she was present at the operation. I find that the plaintiff employed one Amerland, a physician, to assist him in the operation, and that his services were necessary in the performance of the operation. I find that, on the morning after the operation was performed, Mr. Crosby, the president of the defendant, inquired of the company's female physician, Mrs. Bishop, about the patient and the operation, and was informed by her that Dr. Weinsberg was in charge of the case.

"I find that the defendant's president, Mr. Crosby, had a conversation with the plaintiff the morning after the accident, in which the question of the continuation of the plaintiff's services was discussed, and in which conversation Crosby stated that he wished the company's physician to thereafter treat the case, and that it was not a question of expense with him but a preference of physicians. I find that when a bill for said sum against the defendant was sent to the defendant's president, Mr. Crosby, he did not deny the company's liability for the same, but stated in a letter to the plain-

tiff that the bill had been referred to the company's female physician with the request that she should give the matter prompt attention. I find that some time thereafter Mr. Crosby, president of the defendant company, sent one of his clerks to the plaintiff to settle his bill, provided he would make a reasonable bill; that the company's regular physician said the bill was too high.

"I find that the plaintiff refused to reduce the amount of his bill, and I find that the charge of $200 made by the plaintiff for his services and those of his assistant whom he employed, is reasonable.

"From the foregoing, I find it to be a fact that Crosby, president of the defendant company, directed the plaintiff to take the patient to a private hospital and treat him there, intending that the defendant company should pay him for his services.

"I find that there was no express promise prior to the performance of the operation on the part of any officer or employee of the company that the company would pay the plaintiff for his services in performing said operation.

"The articles of incorporation of the defendant were not in evidence and there was no testimony as to the powers and duties of the officers of the corporation. I further find that the secretary of the defendant company, McEnnis, and the physician of the defendant company, Mrs. Frances Bishop, who were shown by the testimony of Crosby, the president of defendant company, to have knowledge of important facts bearing upon the liability of the defendant company, were not produced as witnesses by defendant, nor was their absence accounted for.

### CONCLUSIONS OF LAW.

"There being no testimony as to how the accident occurred, the law presumed that Valuka, the injured

135 App—36

employee, was at the time of his injury in the exercise of due care, and that he was not injured by reason of his own negligence.

"I hold as a matter of law that the defendant company, being a manufacturing corporation employing labor, had implied authority to employ the plaintiff as a surgeon in an emergency to treat one of its employees for injuries received in the factory of the defendant company by such employee while in the service of said company.

"I further hold as a matter of law that the president of the company properly exercised such implied authority. [5 Thompson on Corp., sec. 5840; Terre Haute & Ind. Railroad v. McMurray, 98 Ind. 358; Louisville, etc., Railroad v. McVay, 98 Ind. 391.]

"I further hold as a matter of law that it was not necessary that the president of the defendant company should have made an express promise to the plaintiff to pay him, at the time he employed the plaintiff to render the services sued for. The law will imply a promise from the employment.

"I therefore hold that on the facts found the defendant company is liable to the plaintiff for the value of the services sued for in the sum of $200, with interest thereon from the date of the institution of the suit, and judgment will be entered accordingly for the sum of $213.50."

The articles of incorporation of the defendant were not in evidence, and there was no testimony as to the powers and duties of the president thereof. In view of this, it is argued that the court erred in finding the defendant liable for the services rendered, for the reason, first, that it did not appear to be within the powers of the defendant corporation to employ a surgeon; and second, that it did not appear, even though it was competent for the defendant to do so, that the president was clothed with authority in that behalf. It appears to be conceded throughout the case that the de-

fendant was a manufacturing company, incorporated under the laws of this State. In view of this fact, we entertain no doubt whatever as to its being within its power to employ a surgeon under the circumstances stated. In volume five of his Commentaries on the Law of Corporations, sec. 5840, Judge THOMPSON says: "An implied power will be ascribed to any corporation employing labor to incur expenses on account of injuries received by its employees in the line of their employment, in the absence of any express statutory grant of such power. This implication rests upon the most obvious grounds of justice and humanity." [See also Toledo, etc., Railroad Co. v. Rodrigues, 47 Ill. 188, 95 Amer. Dec. 484; Spelman v. Gold Coin Min. Co. (Mont.), 55 L. R. A. 640, 642.] There certainly ought not to be any question of doubt with respect to the authority of the chief executive officer of an incorporate company, of the character here involved, to execute the power. When a catastrophe occurs in its factory, the corporation ought not to be expected to assemble its board of directors in order to exercise the implied power referred to. There is certainly an emergency power incident to the office of president of such an institution, commensurate with the circumstances now in judgment. The proposition is entirely clear. [See Evans v. Marion Min. Co., 100 Mo. App. 670; Terre Haute, etc., Railroad Co. v. McMurray, 98 Ind. 358; Louisville, etc., Railroad Co. v. McVay, 98 Ind. 391; Cincinnati Railroad Co. v. Davis, 126 Ind. 99; Pacific Railroad Co. v. Thomas, 19 Kan. 256; A. & P. Ry. Co. v. Reisner, 18 Kan. 458; U. P. Railroad Co. v. Beatty, 35 Kan. 268; Toledo, etc., Railroad Co. v. Rodrigues, 47 Ill. 188; Cairo Railroad Co. v. Mahoney, 82 Ill. 73; 20 Amer. & Eng. Ency. Law (2 Ed.), 53; 4 Thompson, Com. on Law of Corporations, secs. 4855, 4984.]

All of the evidence in the case indicates that plaintiff intended to look to the defendant company for his compensation. In fact, such seems to be conceded by the

parties throughout the trial, and the court found as a fact that the defendant company intended to pay him therefor. On this question we quote from the finding of the learned judge as follows: "From the foregoing, I find it to be a fact that Crosby, president of the defendant company, directed the plaintiff to take the patient to a private hospital and treat him, intending that the defendant company should pay him for his services." There is abundant testimony in the record, when treating with the legitimate inferences arising therefrom, to sustain this finding of fact. This being true, the case presented for judgment is one in which it appears the plaintiff physician rendered services at the defendant's request, intending to look to the defendant for his compensation, and that the defendant intended at the time to compensate him therefor. The trial judge further found that although the defendant intended to pay for the services, there was no express promise to that effect prior to the performance of the operation by any one representing the defendant company. In view of the finding that there was no express promise on the part of the defendant to pay for the plaintiff's service, it is argued that the judgment should be reversed for the reason the law will not imply a promise to pay under the circumstances of this case, even though the court found the defendant intended to pay for the services at the time plaintiff was requested to perform the same. It is no doubt true that where a physician or surgeon renders services to one at the mere request of a third person, on whom there rests no obligation to provide such service, the law will not imply a contract to pay on such mere request. On this question, the law is succinctly and accurately stated in 22 Amer. and Eng. Ency. Law, 790, 791, as follows: "When a person requests a physician to perform services for a patient, the law does not raise an implied promise to pay the reasonable value of the services so rendered, unless the relation of the person making the request to the patient is

such as raises the legal obligation on his part to call in a physician and pay for his services." [See also to the same effect, Meisenbach v. Southern Cooperage Co., 45 Mo. App. 232; Jesserick v. Walruff, 51 Mo. App. 270; Morrell v. Lawrence, 203 Mo. 363.]

In view of the law thus stated, it is said no recovery can be allowed in this case for the reason the court found there was no express promise to pay. That is to say, the case is one in which the law declines to imply a contract, and therefore an express contract must be shown. Had the trial judge found a mere request on the part of the defendant and nothing more, the argument would have been persuasive indeed. However, we do not understand that because there was no express promise, it follows there may not be an actual contract, as distinguished from one implied by law. Although the law will not imply one if there be an actual contract, it need not be expressed. [Morrell v. Lawrence, 203 Mo. 363, 373.] It appears the court found not only that the president requested the services, but that he intended the defendant should pay therefor. It conclusively appears the plaintiff intended to charge. In these circumstances, the fact of a contract between the parties is established by the testimony. An agreement between two competent parties, upon a sufficient consideration to do or not to do a particular thing, constitutes a contract within the meaning of the law. [2 Blackstone's Com. 442; 7 Amer. and Eng. Ency. Law (2 Ed.), 90.] Every element of a contract between the parties appears in the present instance. Although not express in all of its details, it nevertheless constitutes a contract. There were present competent parties, the subject-matter, a sufficient consideration, and above all the *aggregatio mentium*, for it appears that the doctor intended to charge and the defendant intended to pay. Under these circumstances, it is unnecessary to refer to the law for implication, for the contract is established as a matter of fact. The authorities above quoted and re-

ferred to deal with the question of the law implying a contract upon a mere request of a third party for the physician to attend a patient and the matter of the intention of the one party to receive compensation and of the other to pay, does not appear to have been an element under consideration. Now, strictly speaking, the question of intention between the parties is wholly immaterial in those cases where the law implies a contract. However, such is not true in cases of this character where the other elements of a contract are present and the minds of the parties have met, the one expecting to receive compensation and the other intending to pay. There is then a contract as a matter of fact, wholly irrespective of the implication of law. In other words, the law implies contracts under circumstances where the minds of the parties do not meet on a given subject and no intention touching the question appears. As for instance, where a party, without an intention to pay therefor, requests another to perform labor for him, and permits it to be executed to his benefit. In such circumstances, unless it appears the party rendering the labor intended it should be gratuitously performed, the law will imply a promise to pay. In such a case, though it is certain there was no meeting of the minds, the law nevertheless implies a contract to pay. Much confusion has been introduced by loose expression touching implied contracts and frequently the distinction which obtains, accurately speaking, between contracts implied by the law and contracts implied by or inferred from the facts, is overlooked. [Fitzpatrick v. Dooley, 112 Mo. App. 165, 173; Hertzog v. Hertzog, 29 Pa. St. 465; People v. Spier, 77 N. Y. 144; 7 Amer. and Eng. Ency. Law (2 Ed.), 91, 92.] A contract implied by law is to be distinguished from an actual contract found from facts, in that there is no actual meeting of the minds of the parties. Such is frequently termed a constructive contract. It is said to be a legal fiction, invented and used for the sake of the remedy it affords.

For instance, if one man has obtained money from another, through the medium of oppression, imposition, extortion or deceit, or by the commission of a trespass, such money may be recovered back, for the law implies a promise from the wrongdoer to restore it to the rightful owner, although it is obvious that this is the very opposite of his intention. In the instances mentioned, the doctrine of a contract implied by law obtains, and this, too, contrary to the intention of the parties. See the following authorities: People v. Spier, 77 N. Y. 144; Hertzog v. Hertzog, 29 Pa. St. 465; Sceva v. True, 53 N. H. 627; Fitzpatrick v. Dooley, 112 Mo. App. 165, 173; 7 Amer. and Eng. Ency. Law (2 Ed.), 91, 92, and cases cited in notes.

Now, as distinguished from such contracts implied by law, there are contracts which may be found or inferred as a matter of fact from the intention of the parties, identically as in this case. In such cases, although not expressed in terms, it is nevertheless a contract found or inferred as a fact. Although there was no express promise, as found by the court, it must be understood from its finding of fact that the doctor intended to charge and the defendant intended to pay. There was a contract between the parties appearing from the facts in proof. In such circumstances, the law does not imply a contract, for such is found to exist as a matter of fact, and upon this contract in fact, the law implies the defendant agreed to respond in a reasonable amount; that is, instead of implying the contract which exists without implication, it implies a reasonable compensation will be made as a result of the contract in fact. [See Fitzpatrick v. Dooley, 112 Mo. App. 165, 173; Hertzog v. Hertzog, 29 Pa. St. 465; People v. Spier, 77 N. Y. 114; Sceva v. True, 53 N. H. 627; 7 Am. and Eng. Ency. Law (2 Ed.), 91, 92.] Although the law might decline to imply a contract on a mere request in this case, it was certainly competent for the parties to make a contract by one requesting the

performance of services, intending to pay therefor, and the other accepting the request and performing the services with the intention to charge. [Morrell v. Lawrence, 203 Mo. 363, 373.] Having thus made a contract, it was entirely competent for the court to find it to exist as a matter of fact, and accordingly give judgment thereon to the effect that, in the absence of express terms as to the amount, the law implied a reasonable compensation. Indeed, the law seems to be well settled, as stated in 20 Am. and Eng. Ency. Law (2 Ed.), 52, 53. "Where medical services are rendered to a servant at the request of the master, or by one who has authority to bind him, the master will be liable for the value of such services." [See, also, McCarthy v. Railway, 15 Mo. App. 385.] In that case it appeared an officer of a railroad having authority in that behalf, requested a physician to attend an injured employee, and relying thereon, the medical services were rendered. On those facts, liability on the part of the company to respond was affirmed by this court and the case was subsequently approved in Meisenbach v. Southern Cooperage Co., 45 Mo. App. 232, on which authority the defendant now relies for a reversal of the present judgment. [See, also, Evans v. Marion Min. Co., 100 Mo. App. 670.] In the case last cited, the court lays some stress upon the fact that it appeared therein the injured employee received his injuries through the negligence of the defendant. While we are not much impressed with that reasoning, we otherwise approve its doctrine. Whether the injured employee received his hurt through the negligence of the employer or not is certainly immaterial. [Davis v. Forbes, 171 Mass. 548.] A doctor, called by the employer in an emergency to treat a man severely injured, ought not to be required to inquire first as to whether the man was injured through the negligence of the employer, by accident or as a result of his own carelessness. And then, too, if such were to be treated with as an

element of the defendant's liability in a case of this character, it would introduce the collateral issues of negligence or no negligence, and of contributory negligence or no contributory negligence, into every case in which a physician seeks to recover on a contract with the employer for compensation in treating an injured employee at its request.

The judgment will be affirmed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.