JOSEPH P. GHIO, Respondent, v. SCHAPER BROTHERS MERCANTILE COMPANY, Appellant.

St. Louis Court of Appeals, February 3, 1914.

1. CORPORATIONS: Authority of Superintendent. While the mere office of superintendent of a plant operated by a corporation does not, in and of itself, imply authority to bind the corporation by contracts for medical services rendered to a person injured while in the corporation's employ, yet such a superintendent may bind the corporation by such a contract, where he possesses, and is accustomed to exercise, comprehensive authority with respect to hiring employees and with respect to the conduct of the corporation affairs in a general way.

2. ————: Authority of Officers: Manner of Determining. In determining the scope of authority of an officer of a corporation, the fact that he holds a certain office or is designated by a certain title is not to control in every instance, but the question is to be determined in view of the facts pertaining to the power usually exercised by him with the apparent consent of the corporation.

3. ————: Authority of Superintendent: Question for Jury. In an action by a physician against a department store corporation for services rendered to an injured employee pursuant to a contract with the corporation's superintendent, *held*, under the evidence, that whether the superintendent had authority to bind the corporation by the contract, was a question for the jury.

4. ————: ————: Ratification. In an action by a physician against a department store corporation for services rendered an injured employee pursuant to a contract with the corporation's superintendent, *held* that even though it were true that the superintendent had no authority to bind the corporation by the contract, nevertheless it was a question for the jury, under the evidence, whether the president of the corporation had not ratified the contract.

5. ————: Employment of Physician: Authority of President. It is within the power of a corporation to employ a physician and surgeon to treat an injured employee, and its president possesses implied authority to execute that power.

6. PHYSICIANS AND SURGEONS: Contract of Employment: Services Rendered Third Person. Unless the relation of a person who requests a physician to render services for a third person is such as to raise a legal obligation on his part to call a physician and pay for his services, the law will not imply a contract on his part to pay for them; but if he expressly agreed to pay, or if it appears that he intended to pay and the physician intended to charge for the services, he is liable, even though he was under no legal obligation to call the physician.

7. ———: ———: ———: Question for Jury. In an action by a physician against a department store corporation for services rendered an injured employee at the request of the corporation's superintendent, evidence *held* to warrant a finding that the physician rendered the services at the request of defendant, with an intention on his part to charge, and on the part of defendant to pay, therefor.

8. CORPORATIONS: Authority of Superintendent: Instructions: Conflicting Instructions. In an action by a physician against a department store corporation for services rendered an injured employee at the request of the corporation's superintendent, an instruction directing a finding for plaintiff if the jury found that the superintendent had employed him to treat the employee and that he had done so, was erroneous, in that it authorized a recovery without requiring a finding that the superintendent possessed authority to employ plaintiff; and this error was not rendered innocuous by an instruction given on behalf of defendant, which required the jury to find that the superintendent possessed authority in and about such matters—the rule, that an instruction which presents but a partial view of the case may be aided by others, not being applicable, since plaintiff's instruction covered the whole case and authorized a finding upon an erroneous theory of the law and was inconsistent with the instruction given for defendant.

9. INSTRUCTIONS: Erroneous Instruction: Cure by Other Instructions. The doctrine that an instruction which presents only a partial view of the case may be aided by other instructions, is not applicable to an instruction which covers the whole case and authorizes a finding on an erroneous theory of the law.

10. PHYSICIANS AND SURGEONS: Action for Compensation: Defenses: Instructions. In an action by a physician against a department store corporation for services rendered an injured employee under an alleged contract with the corporation's superintendent, where one of the defenses set up was that plaintiff was employed by an insurance company in which defendant carried employer's liability insurance, to render "first aid" treatment to employees in defendant's store, and there was evidence that plaintiff had requested payment from the insurance

company for the services rendered, *held* that the matter of the arrangement between the plaintiff and the insurance company should have been submitted to the jury, under proper instructions.

11. **EVIDENCE: Offers of Compromise: Admissibility.** The law protects confidential overtures of pacification, and any other offers or proposals between litigating parties, expressly stated to be without prejudice, are excluded from evidence on the ground of public policy, but, in order to exclude distinct admissions of facts, it must appear, either that they were expressly made without prejudice, or were made under the faith of a pending treaty, into which the party might have been led by the confidence of a compromise taking place; so that where, in an action by a physician against a department store corporation for services rendered an injured employee, the defense was that plaintiff was employed by an insurance company in which defendant carried employer's liability insurance, it was error to exclude evidence that defendant had presented his claim to the insurance company, and had tried to compromise it, since this was an admission not made pending any compromise between plaintiff and defendant.

12. **PHYSICIANS AND SURGEONS: Action for Compensation: Right of Recovery.** A physician employed by a department store corporation to render services to an injured employee was not entitled to recover against the corporation for consultations with physicians appointed by the court to examine the employee for the purpose of testifying in an action brought by her against the corporation.

13. **EVIDENCE: Claims Made by Third Person: Res Adjudicata.** In an action by a physician against a department store corporation for services rendered an injured employee, neither the petition filed in an action against the corporation by the employee, in which she claimed a right to recover for medical services alleged to have been paid out on account of her injuries, nor an instruction given in that action, charging that plaintiff was not entitled to recover for medical services, was admissible in evidence.

14. ————: **Action for Services: Admissibility of Insurance Policy.** In an action by a physician against a corporation for services rendered an injured employee, *held* that it was proper to exclude from evidence an employers' liability insurance policy, offered by defendant.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields, Judge.*

REVERSED AND REMANDED.

*McShane & Goodwin* for appellant.

(1)  On the entire record in this cause plaintiff is not entitled to recover and defendant's instruction No. B. requested at the close of all the evidence should have been given. (a)  There is no evidence showing that Weichelt, the employee of defendant, who directed plaintiff to treat Maude Woods, had any authority to contract for such services and bind the credit of the defendant therefor. Meisenbach v. Cooperage Co., 45 Mo. App. 232. (b) There is no evidence of any promise by defendant to pay plaintiff for his services. There was never any intention on the part of defendant that it would pay for plaintiff's services. There was no actual contract proven and none can be implied. The general rule that where a person requests the performance of a service, and the request is complied with and the service is performed, the law, raises an implied promise to pay the reasonable value of the service, does not obtain where one person requests a physician to perform service for a patient, unless the relation of the person making the request to the patient is such as raises a legal obligation on his part to call in a physician and pay for the service. There must be proof of an actual promise to pay. Meisenbach v. Cooperage Co., 45 Mo. App. 232; Jesserich v. Walruff, 51 Mo. App. 270; Rankin v. Beale, 68 Mo. App. 325; Crowell v. Donoho, 168 Mo. App. 305; Weinsberg v. Cordage Co., 135 Mo. App. 553. (2) The court erred in refusing to allow witness Thompson to testify that the plaintiff had made an offer to him, as the representative of the Casualty Company, to cause or procure a settle of the entire Maude Woods claim, including his bill for services for treating her, for the sum of $500. Ry. v. Smith, 77 S. W. 28. (3) The court erred in giving plaintiff's instructions Nos. 1 and 11. As disclosed by this record Weichelt did

not have any authority to bind defendant to pay plaintiff's bill. See authorities under I (a) and (b), supra. The best possible light the matter could be presented in at any event is that the extent of Weichelt's authority was a question for the jury to determine. These instructions withdrew the question of Weichelt's authority from the consideration of the jury and it was peremptorily directed to hold and charge defendant for the acts of Weichelt. (4) The court erred in allowing plaintiff to read in evidence an instruction given in the trial of the cause of Maude Woods v. Schaper Brothers Mercantile Co., for damages she had sustained by reason of her burns. Before a judgment in another cause can be admitted on the theory that it is *res adjudicata* the judgment must be in a cause between the same parties involving the same issue and such must be mutually binding. 23 Cyc. 1215, 1237 and 1238.

*Vital W. Garesche* for respondent.

(1) The "general manager," or "general superintendent," or "superintendent," or any person in general charge of the business of a manufacturing company, has authority to employ a physician to treat an employee of the company injured through the negligence of the company. Evans v. Marion Mining Co., 100 Mo. App. 670; Swazey v. Union Mfg. Co., 42 Conn. 556; Reynolds v. Railroad, 114 Mo. App. 670; Freeman v. Baking Co., 126 Mo. App. 124; Weinsberg v. St. Louis Cordage Co., 135 Mo. App. 553. (2) If there was any error committed by the court in giving instructions Nos. 1 and 11, offered by plaintiff, it was harmless error, and cured by the giving of defendant's instruction No. 2. Holloday Klotz L. & L. Co. v. Moss Tie Co., 87 Mo. App. 167; Perrette v. Kansas City, 162 Mo. 238; Anderson v. Railroad, 161 Mo. 411; Grace v. Railroad, 156 Mo. 295; Duncan v. Railroad, 111 Mo.

App. 193. (3) It was not error of which appellant can complain for the court to have admitted in evidence the instruction in the Maude Woods case withdrawing from the jury the question of her recovery of damages for medical attention, since appellant itself invited that evidence by introducing in evidence the petition in the Maud Woods case. McGinnis v. Rigby Printing Co., 122 Mo. App. 227; Fields v. Railroad, 113 Mo. App. 642.

NORTONI, J.—This is a suit on an account for medical and surgical service rendered to the benefit of a third person, it is said under a contract with defendant. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff is a practicing physician and surgeon in the city of St. Louis, and defendant Schaper Bros. Mercantile Company is a corporation engaged in the general mercantile business—that is to say, it owns and conducts a large department store in the same city. It appears that plaintiff physician occupied an office in the same building with defendant mercantile establishment, and it is conceded throughout the case that he was regarded as the ''house physician'' and subject to call for the treatment of such injuries or indisposition as might befall those employed in Schaper Brothers' store. The evidence tends to prove that, on December 17, 1910, Maude Woods, an employee of defendant in its kitchen, adjacent to the store restaurant, was severely scalded through the explosion of a steam drum about which she pursued her calling. Immediately thereafter and while the injured employee was but semiconscious, at least, defendant's superintendent, Walter O. Weichelt, summoned plaintiff, Dr. Ghio, to treat and care for her. Dr. Ghio reported immediately on the scene of the accident and administered temporary relief, but to do so found it essential to have certain drugs, such as opium, to allay pain,

medicated cotton, etc., and informed the superintend-
ent to that effect. It is conceded that thereupon Mr.
Weichelt instructed the doctor to procure such neces-
saries from a nearby drugstore, as he did, and, accord-
ing to the evidence of plaintiff, said to him to spare
no expense whatever and save the life of plaintiff, for
Schaper Brothers did not want to lose her. However,
of this, Mr. Weichelt insists, in giving such instruc-
tion, he contemplated only, and that plaintiff evidently
so understood the fact to be, that temporary treat-
ment, or first aid, alone was to be administered by
plaintiff on his order, for it is said such only was with-
in his authority as superintendent of the store and un-
der the contract of defendant with the Casualty Com-
pany of America, which carried liability insurance cov-
ering defendant's employees and relating to such mat-
ters. After plaintiff had administered temporary re-
lief to Maude Woods, he reported to Mr. Weichelt that
the patient should be conveyed to a hospital, as her
injuries were very serious, and inquired if he should
send her to the city hospital. Plaintiff says that Mr.
Weichelt answered this inquiry by saying, "No, take
her to the Deaconess Hospital and spare no expense
about her treatment, for she is an old employee and
Schaper Brothers do not want to lose her." There-
upon, Mr. Weichelt called up the Deaconess Hospital
by telephone and arranged for the patient to be re-
ceived there, and this is conceded throughout the case.
Dr. Ghio accompanied the patient to the hospital and
treated her there for several weeks until she was fi-
nally removed to her home, where he continued to treat
her until recovery was had. Plaintiff paid daily pro-
fessional visits to the patient and evidently admin-
istered proper treatment, and this, too, with great
care, for it appears splendid results were accomplished
and a recovery was had though the injuries were well
nigh fatal.

The Casualty Company of America, which carried liability insurance on defendant, paid plaintiff twenty-five dollars for attending the patient in and about the administration of first aid or temporary treatment while she was yet at the place of injury in the kitchen of the store, and this suit proceeds against defendant as though he was employed under a contract with it to treat her from thence thereafter in the hospital and while at her home until she had recovered. The first item on the account is a charge of ten dollars for treatment administered on December 17, 1910, at the hospital, and it appears plaintiff accompanied the patient from the store to the hospital, though she was taken there in another conveyance—that is, an ambulance called by Mr. Weichelt.

It is argued on the part of defendant that the court should have directed a verdict for it on a conclusion of law, to the effect that, though Mr. Weichelt was its superintendent, no power inhered in that office authorizing him to commit defendant corporation as by contract for medical and surgical services rendered to a third person injured in its employ; but we are not so persuaded on the facts of the case. It is entirely true that the mere office of superintendent does, in and of itself, imply authority essential to bind the corporation on such contracts for medical services rendered to a third person. The Supreme Court has heretofore determined that the office of division superintendent on a railroad did not, in and of itself, without more appearing, authorize such superintendent to commit the company for the payment of medicines at a drugstore for the relief and benefit of a person injured by its cars. [See Brown v. Missouri, K. & T. R. Co., 67 Mo. 122.] So, too, this court on a former occasion declared the same doctrine, to the effect that the mere position of superintendent of a manufacturing company, incorporated, did not imply, as a matter of law, that such superintendent possessed authority to

employ a physician and surgeon to render beneficial
services in aid of a third person, an employee, injured
in its factory. The court said something more than
the title of the office should appear to warrant a re-
covery against the company as through a contract en-
tered into by its superintendent in such circumstances.
[Meisenbach v. Southern Cooperage Co., 45 Mo. App.
232.] But though such be true, it is abundantly well
settled that one occupying the position of superintend-
ent may commit the corporation he so represents, as
by a contract, for medical and surgical services ren-
dered for the benefit of a third person, injured in the
employ of the company, if it appears he possesses and
is accustomed to exercise broad and comprehensive au-
thority with respect to the power to employ persons
for the company and on its account and otherwise ex-
ercises discretion with respect to the conduct of its
affairs in a general way. In this view this court de-
clared, in McCarthy v. Missouri R. Co., 15 Mo. App.
385, that it was competent for the jury to find from the
facts in evidence the superintendent there possessed
authority to bind the railroad company, through con-
tracting with a physician, to treat a third person in-
jured by it, as it appeared he had exercised such power
in other cases for emergency treatment only and that
he had charge of the employing and discharging of
employees for the company generally. In the same view,
the Kansas City Court of Appeals declared, in Rey-
nolds v. Chicago B. & Q. R. Co., 114 Mo. App. 670, 90
S. W. 100, that a claim adjuster for the railroad com-
pany, who appeared to be possessed of general powers
with respect to the settlement of personal injury claims,
possessed authority to commit the company as by con-
tract employing a physician to treat one injured by it.
So, too, the same court, in Freeman v. Junge Baking
Co., 126 Mo. App. 124, 103 S. W. 565, declared that the
general manager of a corporation, who appeared to be
in general charge of the business of the company and

looked after its affairs and occasionally in cases of necessity or emergency employed a physician to treat an injured employee, possessed the power to obligate the company by contract to compensate the physician's services so induced.

It is true the office of general manager appears in the mental vision as something broader and as comprehending more power than that of superintendent, generally speaking. But the mere denomination of the particular office or title is not to control in every instance, for the question of the power annexed thereto is to be determined in the circumstances of the case, with a view of the facts pertaining to the power usually exercised by the corporate officer and with the apparent consent of the company. Sometimes a general manager may be clothed with the usual powers and sometimes, too, a superintendent may be clothed with and exercise powers quite as extensive. The matter is to be determined, in a measure, by reference to the apparent power of the officer and that which it appears he has been accustomed to exercise, for third persons, such as this plaintiff, dealing with the company, have a right to rely on the appearances it holds out. Here, the evidence on the part of plaintiff tends to prove that Mr. Weichelt exercised broad powers in respect of contracting obligations on the part of defendant. It is conceded throughout the case that he employed and discharged those engaged about the store in the conduct of its business, such as salesmen, watchmen, porters and other employees, and that he had general charge of the service. About this there is no dispute, save Mr. Weichelt himself and the president of the company, Mr. E. L. Schaper, say that Weichelt's authority was limited in employing persons by a schedule pertaining to persons whom he might employ, and no authority whatever was possessed by him to employ a physician or surgeon on defendant's account, save for temporary relief to an injured employee, or first aid

treatment, as it is called, under the arrangement of
defendant with the liability company, and of this it is
said plaintiff was fully advised.

But on the part of plaintiff the evidence is that
Mr. Weichelt exercised broad and comprehensive au-
thority with respect to the management of defendant's
business, and that he was known as general superin-
tendent, as he possessed a general superintending con-
trol. Plaintiff testified that while he occupied an office
in the same building and was about defendant's store,
he frequently saw Mr. Weichelt employ and discharge
employees, and, it is said, he seemed to be running the
store in general. Everything that happened that
needed immediate attention was reported to him and
he exercised discretion on the part of defendant with
respect thereto. It appears to be conceded that Mr.
Weichelt possessed authority to call a physician for
the purpose of administering temporary or first aid
treatment to injured persons about the store, and
plaintiff testified that when he rented his office in de-
fendant's building, a few weeks before this injury,
Mr. Weichelt negotiated and executed the lease on the
part of Schaper Brothers with him and signed the name
of that company thereto.

Obviously this evidence is sufficient of itself to
render the question of Weichelt's authority to contract
for the services of a physician, for the benefit of a
third person, injured in defendant's employ, one for
the jury to determine. The court would gravely err
to instruct a verdict for defendant in such a case. But
even beyond this, the record is replete with evidence
on the part of plaintiff tending to show that defend-
ant's president, Mr. E. L. Schaper, knew that plaintiff
was treating the patient from the first day and during
all of the several weeks involved, and that he instructed
him to continue the treatment. Plaintiff says he re-
ported to Mr. Schaper three or four times each week
during the entire period, and that upon different occa-

sions Mr. Schaper told him to take good care of the patient. Plaintiff testifies, ''Mr. Schaper said for me to take good care of her, not to lose her, that she was working for the firm a long time, and he did not like to see her be a cripple, or lose her.'' There can be no doubt that it is within the power of a corporation, such as defendant, to employ a physician and surgeon to treat a patient injured while in its employ, and it is equally well settled that the president of such corporation possesses the implied authority as incident to that office to execute such power. [See Weinsberg v. St. Louis Cordage Co., 135 Mo. App. 553, 116 S. W. 461; Evans v. Marion Min. Co., 100 Mo. App. 670, 75 S. W. 178.] Therefore, though it were true that the evidence failed to reveal authority in Mr. Weichelt to make the contract involved here, there is an abundance in the record tending to prove that defendant through its president, Mr. Schaper, ratified the act of Mr. Weichelt thereabout with full knowledge of all the facts pertaining to it. It is clear the case was one for the jury on the evidence.

It is further suggested the court should have directed a verdict for defendant because there is no direct evidence of an express promise on the part of either Mr. Weichelt or Mr. Schaper that defendant company would compensate plaintiff. Then, too, some of the instructions seem to treat with the matter of an express promise. This argument involves a misconception of the law. There can be no doubt of the proposition that, where one person merely requests a physician to perform services for a patient, the law does not raise an implied promise to pay the reasonable value of such services in every case, for it reckons in a measure with the precepts of humanity and presupposes the request was made on that ground. Ordinarily, if one person requests another to perform beneficial services for him and upon such performance accepts and appropriates the benefits, the law implies

a promise to pay the reasonable value. But this is be-
cause the services are of value to the person requesting
the performance, and because, too, the law will pre-
sume that every person intends to pay for that which
is wrought to his benefit at his instance and request.
However, it is not the same when one person merely
calls a physician or surgeon to attend a third person,
for the dictates of humanity frequently induce one to
do this, and, indeed, it may be the sick or afflicted per-
son is at the time unable to speak for himself. There-
fore, it is the rule of decision that unless the relation
of the person making the request is such as to raise
the legal obligation on his part to call a physician and
pay for his services, the law will not imply a contract
to do so on a mere request. [See Meisenbach v.
Southern Cooperage Co., 45 Mo. App. 232; also 22 Am.
& Eng. Ency. Law (2 Ed.), 790, 791.]

But though such be true, it is not essential that
there shall be an express promise to pay, even where
one calls a physician to attend a third person with
respect to whom no legal obligation obtains, if it suffi-
ciently appears, from the facts and circumstances in
proof, that the physician intended to charge for his
services and the person requesting him to perform the
service intended to pay therefor. The distinction be-
tween an implied contract and an actual contract,
though not an express one, which may be found by the
jury from the facts and circumstances in proof, as
where it appears one party intended to charge and the
other intended to pay, has been heretofore pointed out
and is recognized every day in the administration of
the law. So it is in this case, though it be no one in ex-
press words promised to pay plaintiff for his services,
he may nevertheless recover on contract if the jury
find as a fact that he rendered the services at the re-
quest of defendant with an intention on his part to
charge and that defendant intended to pay therefor.
[See Weinsberg v. St. Louis Cordage Co., 135 Mo. App.

553, 116 S. W. 461; also Morrell v. Lawrence, 203 Mo. 363, 373, 101 S. W. 571.]

For defendant, the evidence tended to prove that plaintiff had rented an office in its building but a few weeks before Maude Woods' injury, with a view of treating, in connection with his other practice, such injuries and indispositions as might befall defendant's employees and others in its store. In this connection, plaintiff is referred to in the evidence as the "house physician." It is said that defendant carried employers' liability insurance and the insurance company objected to plaintiff's treating injuries among the several hundred employees about Schaper Brothers' store. Mr. E. L. Schaper notified plaintiff to that effect and requested him to see the representative of the insurance company with a view to making satisfactory arrangements about it. Thereupon plaintiff called upon Mr. Thompson, the representative of the insurance company, and induced him to withdraw further objections to the course pursued, so that plaintiff might continue to treat such persons at a small charge therefor, to be compensated by the insurance company. The schedule of prices was not signed but tentatively agreed upon, according to Thompson. The evidence tends with great force to prove that plaintiff entered into some sort of an arrangement with defendant Schaper Brothers and also the representative of the insurance company concerning this matter, and, indeed, it appears he treated several injuries thereunder among defendant's employees, and, though he rendered his accounts to Schaper Brothers, was paid by the insurance company for so doing. It is in view of this arrangement, defendant insists, that plaintiff was called by Mr. Weichelt to administer temporary treatment or first aid to Maude Woods upon the occasion of her injury. It is insisted upon the part of defendant that Mr. Weichelt possessed no authority to employ plaintiff beyond this and that plaintiff knew this fact

to be true at the time. Because of this arrangement, plaintiff was called upon as "house physician" to take charge of the case temporarily, and it is insisted on the part of defendant in its evidence and throughout the case that nothing more was intended. Mr. E. L. Schaper, president of defendant company, and Mr. Weichelt deny that they had at any time instructed plaintiff to do more than administer temporary relief, and proceeded on the theory and assumption that whatever treatment he afforded the injured, Maude Woods, thereafter was on some arrangement between him and the insurance company, with whose representative he conferred at different times. Indeed, plaintiff admits he conferred with the insurance company and received compensation—that is, twenty-five dollars—for first aid treatment from the insurance company in this identical case, but sues here for all services rendered thereafter.

On the part of plaintiff, the court instructed the jury that if it found from the evidence that Walter O. Weichelt was superintendent for defendant and employed plaintiff to treat the injuries of Maude Woods and that thereafter between the seventeenth day of December, 1910 and the fourth day of June, 1911 plaintiff did treat her, in pursuance of such employment, then the finding should be for him. This instruction inheres with error, for it authorizes a recovery against defendant upon a showing of no more than that plaintiff was employed by Mr. Weichelt and that Mr. Weichelt was defendant's superintendent, without requiring a finding on the evidence that Weichelt possessed authority to employ a physician for more than first aid relief. Indeed, it is conceded in the brief for plaintiff that this instruction is erroneous, but it is said it is rendered sufficient by the second instruction, given on the part of defendant, which required the jury to find as a fact on the evidence that Mr. Weichelt possessed authority in and about such matters. Obviously this

argument avails nothing here, for the two instructions
are utterly inconsistent and that for plaintiff appears
to be a positive misdirection of the jury, in that it in-
corporates an erroneous view of the law, so as to cast
liability upon defendant. Weichelt was not authorized,
merely on the fact of being superintendent, to employ
plaintiff to administer more than first aid, and the evi-
dence is abundant to sustain this view, though it is
not conceded by plaintiff to be true. Neither does
plaintiff's first instruction require the jury to find
that plaintiff intended to charge for his services and
that Mr. Weichelt intended defendant should pay him
therefor. As before said, there is much evidence in
the case to suggest that defendant did not expect to pay
plaintiff for his services and that he was to look to the
insurance company therefor, and it appears that he
called upon the insurance company's representative
and discussed the matter of his bill for the services
with him. It is true there is an abundance in the evi-
dence to support plaintiff's theory that he was em-
ployed by defendant through the act of Mr. Weichelt
and that he intended to charge defendant and that de-
fendant intended to pay for such services as he ren-
dered after the first aid or temporary treatment, and
there is an abundance, too, tending to prove that Mr.
Weichelt possessed authority to employ a physician on
the part of defendant to treat an injured employee.
But be this as it may, the jury was not required to find
these facts as a prerequisite to defendant's liability
by any of the instructions given on the part of plain-
tiff, and it appears the recovery was authorized on a
mere finding that Mr. Weichelt was defendant's super-
intendent and employed plaintiff. Though it be that
an instruction presenting but a partial view may be
aided by others as supplementary thereto in the case,
this doctrine is without application here, for plain-
tiff's first instruction covered the whole case and au-
thorized a finding for him on an erroneous theory of

the law, which was not only misleading to the jury but was inconsistent as well with the second one given for defendant. Such is reversible error. [See Sheperd v. St. Louis Transit Co., 189 Mo. 362, 373, 87 S. W. 1007; Mansur-Tebbetts Imp. Co. v. Ritchie, 143 Mo. 587, 612, 45 S. W. 634; Ross v. Met. St. R. Co., 132 Mo. App. 472, 112 S. W. 9; Hovey & Brown v. Aaron, 133 Mo. App. 573, 113 S. W. 718.]

Defendant requested the court to submit the matter of the arrangement with plaintiff, whereby he was to administer first aid treatment to injured employees under which he occupied an office in the building and render his bill to the insurance company therefor, but the court declined to do so. It may be that defendant's requested instruction was not worded precisely as it should have been, but it is clear on a retrial of the case the issue concerning this matter should be submitted, for if plaintiff understood that he was called only to administer first aid treatment, and this with a view of looking to the insurance company for his compensation, then no recovery should be had against defendant for the services rendered subsequent thereto, unless it be found as a fact defendant requested such services and that plaintiff intended to charge defendant and defendant expected to pay him for such services. The representative of the insurance company testifies that plaintiff called upon him and requested payment for the services rendered and that the request was declined because the insurance company was not responsible for more than first aid treatment. This evidence suggests, too, that plaintiff did not expect defendant to pay his bill but looked rather to the insurance company therefor. But, as before said, there is an abundance in the case to authorize a recovery for plaintiff on the theory that defendant employed him as if it intended to pay him for the services and that he intended to charge defendant therefor. However, that may be, defendant is entitled to the benefit of its theory re-

vealed in the evidence, and the court should submit it
to the jury, for if plaintiff went about the treatment of
Maude Woods, after administering first aid, without
further directions from defendant or authority what-
ever in that behalf, as defendant's witnesses say, and
with a view of charging the insurance company there-
for, when defendant did not intend to pay him and had
no reason to believe that it would be called upon to do
so, then plaintiff should not be permitted to recover
in the instant case.

Defendant sought to elicit evidence from Mr.
Thompson, representative of the insurance company,
to the effect that plaintiff offered to settle both the
claim of Maude Woods for her injury, including his
charges for medical treatment, for $500, and besought
the insurance company to pay it. The court sustained
an objection and excluded this evidence on the theory
that it involved negotiations pertaining to a compro-
mise. This was error. The fact that plaintiff sought
to collect his charges from the insurance company
tends to prove, as by way of admission, defendant's
theory of the case that he at all times expected to be
paid by the insurance company and not by defendant,
at whose instance it is said he was called merely to
administer first aid. At the time this conference be-
tween plaintiff and the representative of the insurance
company took place, no claim whatever had been pre-
sented to this defendant by him, and no controversy
existed between these parties touching the subject-
matter involved here. The law protects confidential
overtures of pacification, and any other offers or
propositions between litigating parties, expressly
stated to be without prejudice, are excluded from evi-
dence on grounds of public policy. Mr. Greenleaf
says, in his work on Evidence (14 Ed.), Sec. 192, "But,
in order to exclude distinct admissions of facts, it
must appear, either that they were expressly made
without prejudice, or, at least, that they were made

under the faith of a pending treaty, and into which the party might have been led by the confidence of a compromise taking place." It appears that there was no treaty of compromise pending between plaintiff and this defendant at the time of his conversation with the representative of the insurance company in which he sought to collect his bill for the services rendered to Maude Woods. Indeed, at that time no claim whatever had been suggested to defendant. The only claim so far asserted was twenty-five dollars, which had been presented to the insurance company and paid a long time before. Obviously this evidence sought to be elicited from Thompson is in no wise protected by the rule pertaining to a treaty of compromise between contending parties, for the reason stated. Moreover, although plaintiff was seeking to compromise a claim on account of personal injuries for Maude Woods, including his own demand in that settlement, all of which arose from the injury to Maude Woods, received in defendant's store, on which the insurance company was liable under its policy for indemnity on account of injuries to employees, it is clear that Thompson, the insurance agent, did not represent defendant on that occasion. Therefore communications made to Thompson by plaintiff, touching that matter, certainly cannot fall within the rule excluding admissions because made for the purpose of a compromise. [Moore v. Gaus & Sons Mfg. Co., 113 Mo. 98, 20 S. W. 975.]

Plaintiff sued for $2550 and recovered a verdict in the amount of $1250. In his account he included one item of twenty-five dollars for consultation with Dr. Bartlett and one of twenty-five dollars for consultation with Dr. Engman. It appears by the instruction on the measure of damages that the court, in a general way, authorized a recovery for these items as well as all others in the bill, except the items for consultation with Dr. Paugh of twenty-five dollars and Dr. Johnson of twenty-five dollars. Moreover the court refused de-

fendant's instruction requesting it to withdraw from the jury the item of twenty-five dollars each on account of consultation with Doctors Bartlett and Engman. It is entirely clear that plaintiff may not recover for the consultations had with Dr. Bartlett and Dr. Engman. Defendant in no view of the case may be regarded as responsible for these consultations. It appears that Maude Woods, the injured employee, instituted a suit against defendant on account of the personal injuries received by her. In that suit the circuit court appointed Dr. Bartlett and Dr. Engman to examine her with a view of giving evidence in the case—that is, in her suit for personal injuries. These doctors called upon plaintiff and consumed some of his time in going over the case. It appears that he advised them fully and freely, but certainly this defendant is in no wise responsible for this. The court should have withdrawn these matters from the jury as it did the items pertaining to the consultations with Dr. Johnson and Dr. Paugh.

Defendant introduced in evidence in this case the petition in the case of Maude Woods against Schaper Brothers Company, with a view, it is said, of showing that Maude Woods claimed a right to recover of defendant, too, for medical services and attention which she alleged to have paid out on account of her injuries. In connection with this, plaintiff then introduced an instruction given in that case on the part of defendant, to the effect that plaintiff, Maude Woods, was not entitled to recover anything on account of medical services rendered to her, for it appeared she paid out nothing whatever in that behalf. It may be that it was well enough to receive the instruction on the measure of damages in evidence, inasmuch as the court had admitted the petition, of which fact, of course, defendant cannot complain, for it offered the petition in the Maude Woods case in evidence. However, as the case

180 App. 45

is to be retried, it is well enough to say that neither the petition nor instruction in the case referred to is competent evidence in this one, and both should be excluded.

The court properly excluded the employer's liability insurance policy offered by defendant and should do so on a retrial.

Because of the several errors above pointed out, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.