WINFIELD B. CAPRON, Respondent, *v.* UTICA ICE COMPANY, Appellant.

County Court, Oneida County, August 28, 1926.

Contracts — action by dentist to recover for services rendered to defendant's employee — employee was injured in course of employment — when plaintiff was engaged by defendant's regular physician, latter and defendant's president assumed employee was covered by compensation insurance — injury was caused by epileptic seizure and compensation was denied — defendant's president had implied power to act — plaintiff's right not waived by presenting bill to insurance carrier — defendant is liable.

One of defendant's employees suffered a double fracture of the jaw in the course of his employment. The defendant's president directed the company's regular physician to care for the injured employee and he, acting under general authority, engaged the plaintiff to reduce the double fracture of the jaw. At the time of the injury and when the services were rendered the defendant's president and its regular physician as well as plaintiff assumed that the employee was covered by compensation insurance for the injury suffered but it later developed that the injury was due to an epileptic seizure and compensation was denied and the insurance carrier refused to pay plaintiff's bill. In view of the fact that at the time the contract was made with the plaintiff the defendant apparently was liable to care for the employee and believed that it was so liable, the plaintiff may recover for the services rendered notwithstanding it subsequently developed that the defendant was not liable legally to provide medical attention for the injured employee.

The defendant's president had implied power to contract for plaintiff's services.

The plaintiff did not, by presenting his bill to the insurance carrier under the mistaken assumption that it was liable, waive his right to proceed against the defendant.

APPEAL from a judgment in favor of the plaintiff, in the City Court of Utica, and for a new trial. Jury waived and case tried before the court.

*Frank J. Ryan*, for the appellant.

*Lee, Dowling & Brennan*, for the respondent.

HAZARD, J. Sometime in January, 1925, one O'Connor, an employee of the defendant, sustained a serious injury while engaged in working for the defendant. Mr. Schmidt, the president of the defendant, telephoned to Dr. L. W. Locke, the company's regular physician, informing him that one of their employees was hurt and asking him to come at once to a certain hospital. Dr. Locke complied with the request and met Schmidt and the injured man there, and was directed by Schmidt to " do everything possible to do for him." Dr. Locke took care of the patient, who was in a serious condition, and upon learning that among his injuries there was a double fracture of the lower jaw, he called in the plaintiff who reduced the fractures, repaired the damage as far as possible, and has a claim for $250 for his services in so doing.

It transpires that the defendant carried compensation insurance and it is doubtless a fact that both Mr. Schmidt and Dr. Locke, and possibly the plaintiff, all supposed in the earlier stages of this case that it was a " compensation case." It seems that Dr. Locke had for a number of years been taking care of employees of the defendant who had been injured in the course of their employment and his bills for so doing were usually, but not always, paid by the " insurance carrier." It was supposed that this was a " compensation case," and plaintiff was told by Dr. Locke to send his bill to a certain insurance company and did so. However, it transpired that O'Connor's injury was due to an epileptic seizure. This seems to be admitted by everyone connected with this case; and it seems also to be admitted that under such circumstances the insurance company is not liable; and it is understood to have declined to pay the bill rendered by plaintiff. The defendant also refusing to pay the bill, this action has been brought, and plaintiff has recovered in the court below and defendant has appealed to this court where the case has been retried.

Defendant offered no evidence upon the trial; and, although the stipulation submitting the case to me was signed about three months ago, has not filed any brief. Just what the defendant's claims in the premises are, I am not advised. Probably it considers itself fortified behind the cases of *Crane* v. *Baudouine* (55 N. Y. 256) and *McGuire* v. *Hughes* (207 id. 516). The principle established by those cases has been extended to the case of a

54

hospital (*Homeopathic Hospital* v. *Chalmers*, 94 Misc. 600; affd., 184 App. Div. 916), and doubtless a dentist would come within the same category as a physician or a hospital. The particular rule in *McGuire* v. *Hughes* (*supra*) is as follows (p. 519): " The general rule, that, where a person requests of another the performance of services, which are performed, the law implies a promise by the former to pay their reasonable value, has no application in the case of a physician, rendering professional services to a third person, if the relation to the patient of the person, who requests them, be not such as imports the legal obligation to provide them." Again (at p. 521) the court practically restates the same proposition in the following language: " I am, therefore, of the opinion that it should be taken as the rule of law, too well settled upon authority to be now questioned, that a physician, in the absence of a special contract, may recover upon an implied agreement to pay for his services *quantum meruit*, when they have been rendered at the request of the patient, or of a person who, in the eye of the law, is regarded as being under a legal obligation to provide such professional services for the patient; such as a husband, or the parent of a minor child." The dictum of this case seems to be that in no instance will *a promise to pay* for the services of a physician, etc., be *implied*, unless the one requesting the service *is under some legal obligation to provide the service requested;* and the question is, therefore, presented as to whether the defendant was under any such obligation. In this connection we come upon a peculiar situation because, as subsequently understood, it transpires that the ice company was *not* in fact under obligation to take care of its employee, but it was apparently liable and Schmidt, the president of the company, *supposed* that it was liable, under section 13 of the Workmen's Compensation Law. He, therefore, ordered the man cared for by Dr. Locke. The latter testified that he had general directions in all of defendant's cases, to employ whatever help or assistance was necessary, and in pursuance of that authority he employed the plaintiff, this being a case for a dentist. He also informed Schmidt of the fact, shortly after and before much of the work had been done, and Schmidt raised no objection. Dr. Capron went on and completed his work and is now seeking his pay therefor. The insurance carrier will not pay, and, concededly, is not liable. The patient probably is not responsible financially and did not order the work anyway; and the only possible source of compensation is the defendant. It is doubtless true that, had Mr. Schmidt or Dr. Locke been aware of the true nature of the occurrence in which O'Connor received his serious injury, probably neither would have interested

himself in the case. As it was and acting under a misapprehension, Mr. Schmidt called Dr. Locke and directed him to do everything possible for the injured man. Dr. Locke's action in the case is due wholly and entirely to Mr. Schmidt's order. Both acted in good faith. One of them must suffer, that is either Dr. Locke's employee, the plaintiff, must go unpaid, or Mr. Schmidt's company must pay him. It is a fundamental principle of law that, where one of two innocent parties must suffer, he must bear the burden whose act made the situation possible. In this case it was Mr. Schmidt's act which started Dr. Locke and the plaintiff into action. He assumed that his company was liable; apparently it was; as O'Connor had sustained a severe injury by a fall while engaged in working for the Utica Ice Company. Under such circumstances, Mr. Schmidt employed the plaintiff, through Dr. Locke, and it seems to me only fair that he should pay him, for, otherwise, he must go unpaid.

I do not think the doctrine of " mutual mistake " can be successfully invoked by the defendant. It is said that " mutual mistake as to material facts will void the agreement." (9 Cyc. 397.) The principle, I believe, relates to *executory* contracts only. " The principle which underlies all the reported decisions in this class of cases is, that when the legal rights of the parties have been changed by mistake, equity restores them to their former condition, *when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights*, and without doing injustice to other parties." (*Lumber Exchange Bank* v. *Miller*, 18 Misc. 127–132.)

Nor do I consider that there can be any question of the authority of Mr. Schmidt to act for his company, although there is no particular proof on that subject. " The rule is well settled that it will ordinarily be presumed that a president of a corporation has the power to make contracts pertaining to the business of the corporation and coming with the apparent scope of his authority." (*Spitzer* v. *Born, Inc.*, 194 App. Div. 739.) I think the law in the case is clearly stated in the case of *Weinsberg* v. *St. Louis Cordage Co.* (135 Mo. App. 553; 116 S. W. 461) where the court said: " When a catastrophe occurs in its factory, the corporation ought not to be expected to assemble its board of directors in order to exercise the implied power referred to. There is certainly an emergency power, incident to the office of president of such an institution."

Dr. Capron, the plaintiff, doubtless rendered a bill for the services for which this action is brought to the insurance carrier. This was done upon the direction of Dr. Locke, and upon the assumption that O'Connor's was a " compensation case " and that

the insurance carrier would pay the bill. It was all a part of the original mistake which everybody connected with the case entertained at the outset and during and throughout the time when Dr. Capron was performing his services. I do not think that by rendering a bill to the insurance company, Dr. Capron waived or forfeited his claim, when the insurance carrier had refused to pay the bill, to look to the man who employed him and directed him to do the work.

Neither does section 13 of the Workmen's Compensation Law prevent a physician employed by an insurance carrier from maintaining an action to recover for his services. It is held that the provision of that section " has reference only to the fees and charges *incurred by the working man*, his medical treatment, where the employer refuses or neglects to provide such treatment." (*Feldstein* v. *Buick Motor Co.*, 115 Misc. 170, 174; *Weinreb* v. *H. B. & L. R., Inc.*, 204 App. Div. 293.)

For all of the reasons which I have tried to make clear hereinbefore, I feel compelled to hold that the defendant is, under the circumstances, responsible to the plaintiff for his bill; and will direct a recovery for the amount claimed, with costs.

Findings and judgment may be prepared accordingly.