THE HOMEOPATHIC HOSPITAL OF ALBANY, N. Y., Plaintiff, *v.* ROBERT M. CHALMERS, MARGARET M. STURDEE, H. KING STURDEE, JESSIE M. HILTON and EDWARD F. HACKETT, Copartners, Doing Business under the Style and Firm Name of JOHN G. MYERS COMPANY, Defendants.

(City Court of Albany, March, 1916.)

Services — liability for services of physician and of hospital in necessary care of minor — contracts — evidence — Workmen's Compensation Law.

The primary liability for the services of a physician and of a hospital in the necessary care, treatment and maintenance of a minor while at such institution rests upon his parents.

Where a hospital elects to bring an action on contract against defendants for the care, etc., of an injured employee, a minor, without regard to the Workmen's Compensation Law, plaintiff, in order to recover, must show by a fair preponderance of evidence either an express, or an implied, contract that defendants would pay for the necessary services rendered in the care of the employee.

Evidence of telephone conversations had after the employee had been taken to the hospital between its employees and some unknown person who, though talking from defendants' store, was not shown to have authority to bind them, considered, and held that it tended to show a disclaimer of liability on the part of defendants for the services rendered the injured employee at the hospital, and not a contract to pay therefor.

Defendants not being primarily liable for the care and maintenance of the employee were not bound to pay plaintiff's charges incident thereto, even assuming that the evidence

established an express or implied request on the part of defendants that the hospital should receive and care for the injured employee.

ACTION to recover a sum of money.

Visscher, Whalen & Austin (J. Harris Loucks, of counsel), for plaintiff.

John J. Scully (Charles Irving Oliver, of counsel), for defendants.

HALTER, J.   This action is brought by the plaintiff against the defendants to recover the sum of $426 which item includes the use of operating room, ambulance fee, care and maintenance of one James Brannigan.

The evidence fairly shows that the boy was in the employ of the defendants as an errand boy and was a minor, and this being so his parents were primarily liable for his care and maintenance and were, therefore, liable for the services of a physician and of the hospital in the necessary care, treatment and maintenance of the boy while at such institution; therefore, the defendants in this case cannot be held for such services unless there was an express or implied contract on their part to do so.

It is true that had the plaintiff sought to recover for its services under the provisions of the Workmen's Compensation Act the defendants *might* have been fairly chargeable for such services for a period of sixty days subject to the express terms of that statute; but the plaintiff elected to bring its action upon contract without regard to the terms and conditions of the Workmen's Compensation Law, and therefore in order that it may recover in such an action it must show by a fair preponderance of the evidence that there was, between itself and the defendants, either an express

or an implied contract that the defendants would pay for the necessary services rendered by the plaintiff in the care and maintenance of the boy at its hospital.

There cannot be any question from the evidence in this case that there was no express contract. As to the question whether there was an implied contract upon the part of the defendants to pay the claim of the plaintiff the testimony fails to disclose any such contract upon the part of the defendants; on the contrary the fair preponderance of the evidence shows that the defendants were treating the matter of this claim as coming under the Workmen's Compensation Act, and that, therefore, if there was a liability upon the part of any one other than the parents of the boy it was the liability of the Massachusetts Bonding Company rather than any liability on their part.

The preliminary conversations had over the telephone by the employees of the hospital with somebody representing that they were talking from the store of the defendants comes clearly within the rule as to telephonic communication, their admissibility and weight as evidence, laid down in *Mankes* v. *Fishman*, 163 App. Div. 789, and cases therein collated, and there is nothing in the evidence to show that any person authorized to bind the defendants made any contract with the hospital either express or implied; there is no evidence that any one at the hospital talking over the telephone recognized or knew the voice of the person talking from the other end of the line, or that it was any one authorized to bind the defendants nor was there any evidence of attending circumstances sufficient to show that any such person authorized was so talking at the time when the boy was first sent to the hospital and at the time when the bill for his attendance and care first commenced to run; it is true that the superintendent of the hospital, the witness, Miss Littlefield, did testify

that she went to the store of the defendants and asked for some person in authority; that no such person was there, and she was informed that she would be called on the telephone; that later she was called on the telephone; that at the time of such call she knew who was talking though she does not explain how she obtained her knowledge, nor does she state who such person was; whatever the conversation may have been at this time it was concededly after the hospital had entered upon the task of caring for and maintaining the boy and did not at all disclose who the person was talking to her, nor whether the person was any one who had the authority to bind the defendants, and if it proves anything tends to show a disclaimer on the part of the defendants of any liability for the services rendered the boy at the hospital.

The testimony of the witness Griffiths, president of the hospital corporation, is of very little weight; it is filled with inferences, suppositions and deductions rather than with direct statements of what was said, and all of the admissions which he testifies were made either by the defendants Chalmers or Hackett were coupled with statements that the bonding company should pay the bill, thus indicating that the defendants were at this time rather denying liability on their part than admitting it; and further all of these so-called promises were made long after the bill had been incurred and long after the discharge of the boy from the hospital, and if the defendants were not primarily liable for the care and maintenance of this boy such statements were not sufficient to bind them.

But assuming that it has been established by the evidence that there was an express or implied request upon the part of the defendants that the hospital should receive and care for the boy, can it be said, in view of the fact that the defendants were not pri-

marily liable for such care and maintenance that they were bound, by such request, to pay the charges incident to such reception and care?

I think not, for the rule, it seems, is well settled in this state that a party not primarily liable for the support of another is not chargeable with a bill for physicians' services rendered to such other person even upon the request and at the instance of such party not so primarily liable. This principle is fully set out and the rule laid down in the case of *McGuire* v. *Hughes,* 207 N. Y. 516, and I am of the opinion that this rule applies with equal force and effect to a bill for the nursing, care and maintenance of a patient at a hospital; the services of a physician rendered to a patient and the services rendered to a patient by a nurse together with the appliances, room, and the proper food for such patient are analogous and the rule established as to the one must prevail as to the other.

I find the defendants are entitled to judgment upon the merits dismissing the complaint, with costs to be taxed. Extra allowance of ten dollars.

Judgment accordingly.