WILLIAM A. ROSENBAUM, Appellant, v. J. A. GILLIAM, Assignee of PHOENIX BATTERY CO., Respondent.

St. Louis Court of Appeals, May 12, 1903.

1. **Corporations: OFFICERS AND THEIR AUTHORITY TO ACT.** Where an officer of a corporation, placed in control of its affairs and permitted to manage its business, deals with a party with respect to the affairs of the corporation who has no knowledge of the want of the officer's authority, such party may hold the corporation, though the latter exceeds his authority, and the by-laws of the corporation limiting the power of the officers are not admissible as against such person, in the absence of proof showing knowledge of them on his part.

2. ———: **INSTRUCTION PEREMPTORY, OUGHT NOT TO BE GIVEN, WHEN.** A peremptory instruction in favor of one party is improper where there is substantial testimony, direct or inferential, tending to establish the claims of the adverse party.

3. ———: TRIED BY COURT: INSTRUCTIONS WHETHER TRIAL BEFORE COURT OR JURY, THE SAME. In actions at law tried by the court, instructions should be given and refused in the same manner as when the trial is before a jury, so as to enable the appellate court to determine the theory of law adopted by the trial court.

4. ———: INSTRUCTIONS BY THE COURT: EQUIVALENT TO A DEMURRER, WHEN. The giving of instructions by the court before whom an action is tried, to the effect that on the evidence plaintiff can not recover, is equivalent to a demurrer to the evidence, and can not be considered a general finding.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz,* Judge.

REVERSED AND REMANDED.

*C. S. Broadhead* and *F. C. Sharp* for appellant.

(1) The law of this State is, that the application of the principle of agency is the same whether the principal is a corporation or an individual, and that if an officer of a corporation is allowed to deal with a third person, the company is bound, even though the agent exceeds his authority. Madden v. Realty, 75 Mo. App. 358; Sparks v. Dispatch Co., 104 Mo. 531; Moore v. Gauss, 113 Mo. 98. (2) It is clear that the managing officers of the corporation have power to employ attorneys and counselors; if such officers transcend their powers as limited by the particular corporation, they are responsible to their employers, but outsiders are not supposed to be advised of their limitations. Southgate v. Railroad, 61 Mo. 89; Bank v. Gilstrap, 45 Mo. 419; Ins. Co. v. Oakley, 9 Paige Ch. 496; Kieley v. Forsee, 57 Mo. 390. (3) Appellant can not be bound by the by-laws of respondent company, nor the resolutions of the respondent corporation, nor by respondent company's contracts, unless they show that appellant was put upon notice of the same. Northrup v. Ins. Co., 47 Mo. 440; Lungstraus v. Ins. Co., 57 Mo. 109.

*J. M. Holmes* for respondent.

(1)   He can not rely, save at his own risk, on the statements of the agent.   Lester v. Snyder, 55 Pac. 613; Henry v. Cotesworth Co., 79 N. W. 616; Grooford v. Berkowitez, 7 Kan. 24.   (2)   Upon the entire record the judgment was manifestly for the right party, and hence should be affirmed.   Williamson v. Dewey, 9 Mo. App. 598; Vaughn v. Daniels, 98 Mo. 230; Cook v. Farrah, 105 Mo. 492; Ittner v. Hughes, 113 Mo. 679; Fontaine v. Bank, 57 Mo. 558; Failey v. Gunning, 155 Mo. 682.

REYBURN, J.—Plaintiff tendered to defendant as assignee for allowance against the estate of the Phoenix Battery Manufacturing Company, under section 342 of the Revised Statutes, a demand expressed as follows:

"New York, February 13, 1900.

"Phoenix Battery Mfg. Co.,

To William A. Rosenbaum, Dr.

Electrical Expert and Patent Solicitor.

177 Times Building.

1899.

Sept. 11.   To services and disbursements made for you in preparing and filing applications for patents on chemical generator of electricity in Canada, England, France, Belguim, Germany, Austria-Hungary, Russia, Sweden, Norway, Italy, Denmark, Spain, Switzerland, Portugal, Mexico, Brazil, Argentine, Japan, India, New Zealand, South Australia, N. S. Wales, Queensland, Victoria, as per special contract with you   $3,000 00

Sept. 15.   Rec'd. payment on acct. from you..............................   500 00

Balance...... ........ .....,...... $2,500 00

| | |
|---|---|
| Nov. 8. To final U. S. Government fee, paid for you this day.............. | 20 00 |
| 1900. | |
| Jan. 4. To Notary's fees on your note for $500 dated October 4, at three months, on account of the above, not paid and protested......... .. ............. .... | 3 20 |
| Interest on amount covered by said note.... ........ .................. | 7 50 |
| Feb 4. To notary's fees on your note for $500, dated October 4, at 4 months, on account of the above, not paid and protested....... ............. ........... | 3 20 |
| Interest on amount covered by said note........ ............. ........... | 10 00 |

$2,543 90

At the hearing before the assignee the demand was allowed against the assigned estate to the extent of twenty dollars, the item for cash paid for final government fee; upon appeal by plaintiff to the circuit court, a trial anew ensued before the circuit judge, a jury being waived, with substantially the same result. It appeared that a corporation had been organized under the laws of Missouri, styled the Phoenix Carbon Manufacturing Company, for the purpose of manufacturing electric generators, carbon points and like products, adopting in such manufacture a process invented by E. L. Anderson, who had made application to the United States for letters patent upon his invention, but which then had not been issued. He had executed a written license to H. L. Page, and this licensee had in turn assigned his rights thereunder to the carbon company. Claimant had been employed by Anderson and S. G. Booker to obtain letters patent in the United States and his fees for such services were paid by the carbon company. The defendant's assignor was or-

ganized in March, 1899, entitled the Phoenix Battery Manufacturing Company, and acquired from the carbon company that department of its business using the process invented by Anderson. The stockholders and officers of the two corporations were substantially the same; the secretary and treasurer of both was H. L. Page, and the superintendent of both companies was S. G. Booker. The license of Anderson was transferred by the carbon company to trustees under an agreement providing that the Anderson license should be held for the benefit of the battery company, but should not constitute an asset nor become the property of such company, until a majority of its stockholders in writing should direct its transfer, and then to be made at a fair valuation payable in shares of stock of the Phoenix Battery Manufacturing Company to be distributed among its stockholders according to their respective holdings.

In Anderson's license to Page, the licensee and his assigns were authorized to use any of the processes protected by any patents, which Anderson might obtain from the United States or from foreign countries, in the art of generating electricity, and to make use of any improvements, devices or apparatus embraced by the proposed patents in any of the countries in which Anderson might obtain such letters patent.

The testimony disclosed that the active business of the battery company was conducted at its factory in the city of St. Louis under the general charge and management of its secretary-treasurer, Page, and its superintendent, Booker; the general financial business being conducted by Page who, however, had received at no time express authority to execute or deliver in behalf of the company any promissory notes in its name.

The board of directors met at intervals at the office of the president, remote from the place of business of the company where its mail was received, and which was rarely visited by the directors or officers other than

Booker and Page, and the latter made daily reports to the president and attended the board meetings.

The battery company had adopted for its government a code of by-laws, containing among others the following provisions:

"Article 3. The officers of the company shall be president, vice-president, secretary, treasurer and superintendent.

"Section 4 (Article 4). The treasurer shall receive all money belonging to the company, and shall deposit the same in such bank or banks as may be prescribed by the directors, and he shall have custody of all securities and shall account for the same; he shall dispense the money of the company, only upon vouchers certified by the secretary, and approved either by the president or superintendent.

"All checks must be signed by the treasurer, who shall give such bond as may be required by the board, and in case of his temporary absence, his duty shall be performed by the board of directors as the board of directors shall prescribe it.

"Section 5. The superintendent shall have special control of the manufacture of carbons; shall have supervision of the plant, the employment of all labor, the purchase of all supplies for manufacturing purposes, and the sale of the product. In all purchases of new machinery, extensions and betterments of the plant, he shall make his written recommendations and requisitions to the board of directors, and, upon approval of the board, make such purchases as may be authorized. He shall do and perform such other duties as may from time to time be required by the board of directors."

In July, 1899, the condition of the affairs of the company was unsatisfactory to its stockholders, and rendered it prudent to consider liquidation. The superintendent, Booker, then obtained an option from the stockholders signed by all but one shareholder who was

absent in Europe, entitling him to purchase the stock of the battery company with the rights under the license of the patent for the sum of $50,000, and he had previously obtained by oral agreement a half interest in the profits of this license which was subsequently reduced to writing by plaintiff. According to plaintiff, his professional employment had been commenced in March, 1898, by the Carbon Manufacturing Company by being consulted regarding its inventions and patent affairs and securing his services to take out various patents for it, which employment continued until he was notified by its officers, that the Phoenix Battery Manufacturing Company had become its successor early in the year 1899, at about which time in reply to an inquiry therefor, plaintiff submitted to the battery company an estimate of his charges for preparing applications for letters patent to foreign governments, aggregating $3,200, which, however, was subsequently reduced by plaintiff to $3,000 and the employment completed by Booker for the corporation. A desultory correspondence had been maintained from April to October of 1899, between plaintiff and the battery company, through its superintendent, Booker, impressions of the letters to plaintiff being preserved in the letter-press books kept in the company's office. In September, 1899, plaintiff received and cashed in due course a check of the company drawn by Page as treasurer for $500 on account of his services, being the amount credited, and in October, 1899, he received two notes for $500 each, executed on behalf of the battery company by Page for the same account, which notes matured after the assignment and were not honored, all as appeared on the face of the account in suit.

The testimony conclusively and without denial established that prior to the assignment neither the president nor any of its officers, other than Page and Booker, had ever authorized the employment of plaintiff or had any knowledge of the rendition by him of ser-

vices respecting the foreign applications for letters patent or of any payment to him therefor.

At the close of the testimony the court refused plaintiff's declarations of law, but at the instance of the defendant gave the following:

"1. The court declares the law to be that the value of plaintiff's services and the fact of their rendition is not in issue in this case, but the question to be determined is whether the services of plaintiff were rendered to S. G. Booker individually, in which case plaintiff can not recover; or whether they were rendered to the Phoenix Manufacturing Company.

"In determining whether or not they were rendered to such company, should the court, sitting as a jury, find from the evidence that the services were ordered by S. G. Booker, purporting to act as an agent of the company, still the burden of proof is on the plaintiff to prove that said Booker had authority from the company to so order them, or, that the company had given the plaintiff reasonable ground to believe that he had; and unless the court, sitting as a jury, is satisfied from the evidence that Booker was authorized by the company to order the said services, or that the company at or before the time the order was given had, through the action or representation of its officers, given plaintiff reasonable ground to believe that Booker was so authorized, then the court, sitting as a jury, will find a verdict for the defendant.

"2. The court declares the law to be that under the evidence offered in this case the plaintiff can not recover for the services rendered or the expenses incurred by him in procuring the foreign patents for which he sues in this action.

"3. The court declares the law to be that no sufficient evidence has been introduced in this case to show that the services rendered by plaintiff in procuring the foreign patents were rendered at the instance and request of the Phoenix Manufacturing Company, or at

the instance and request of any one thereunto authorized by said company.''

The substantial defense interposed by defendant to plaintiff's claim was, that he was not employed by the corporation, as Booker, who assumed to act on its behalf, was not empowered to contract for the services of plaintiff in obtaining the foreign letters patent. The second instruction given for respondent in effect declared that the evidence did not tend to show that the services rendered by plaintiff in procuring the foreign patents were authorized by the Phoenix Battery Manufacturing Company. The principles of the law of agency in Missouri applicable to natural persons and legal entities are the same, and where an officer of a corporation has been put in control of its affairs and permitted to manage and conduct its business, his authority to bind the corporation will be inferred from the ostensible authority thus conferred upon him, and a party with whom such managing agent has dealt respecting the affairs of the corporation, where no knowledge of the want of authority is disclosed, may hold the corporation for the acts of the agent on its behalf, although the latter may transcend his authority. Moore v. Gaus & Sons Mfg. Co., 113 Mo. 98; Lungstrass v. Ins. Co., 57 Mo. 107. The statute law of this State has recognized as obligatory parol contracts implied from the acts of an agent whose powers are of a general character. R. S. 1899, sec. 974.

In Southgate v. Railroad, 61 Mo. 94, it was held that ''managing officers of corporations have power to employ attorneys and counselors, without express delegations of power or formal resolutions to that effect.'' This case will be found cited in later cases in the Supreme Court as well as in this court. Taussig v. Railroad, 166 Mo. 28; Hill v. Bank, 87 Mo. App. 590.

It was manifest from the mass of testimony introduced at the trial, that the general management of the affairs of the corporation was turned over to Booker

and Page, and the record abounds with substantial evidence from which authority on part of these managing officers to employ an attorney under the conditions narrated by plaintiff may be reasonably inferred. The justice of reimbursing plaintiff for the final item of expenditure attending the United States patent was recognized and unquestioned, and the services and disbursements for the foreign patents were of the same general nature. The authority of Booker and its extent were to be determined by a consideration of all the testimony. The history of the transaction with plaintiff, and the correspondence between him and the agent of the corporation, who undertook to act on its behalf, were to be found in the books of the company kept in the usual course of business, and that these business records and documents were not inspected or supervised by the president or any other officer, so as to reveal the employment and services of plaintiff prior to the assignment, and that the board of directors remained in ignorance are but circumstances establishing conclusively the plenary and unrestricted control and management of the corporate affairs entrusted to and exercised by the superintendent and the secretary-treasurer.

The by-laws introduced and appealed to as placing limitations upon the power of these officers are not conclusive against plaintiff, and without connecting proof of knowledge or notice on his part, were not admissible against him. In the absence of such knowledge he was entitled to rely on the apparent authority, with which Booker and Page were vested, and upon the course of dealings and transactions in the affairs of the company as evidence of ratification by the company of the acts of these officers on its behalf.

The instruction indicated was erroneously given, as an instruction of a peremptory character was improper where there was substantial testimony, direct or inferential, tending to establish the issue involved.

Adopting the rule enunciated by the Supreme Court, in actions at law tried by the court without a jury, instructions should be given and refused in the same manner as when tried before a jury, to enable the appellate court to determine on what theory of law the trial court proceeded. Suddarth v. Robertson, 118 Mo. l. c. 293. The respondent contends that the instruction given was not equivalent to a demurrer to the evidence and was practically a general finding considered jointly with the first declaration, but the authority depended upon was questioned at least, if not discredited, in a later case of the same court. Hess v. Clarke, 11 Mo. App. 492; Blanke v. Dunnerman, 67 Mo. App. l. c. 597.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Goode, J.,* concur.