F. R. NEWBERRY, Respondent, v. MISSOURI
GRANITE & CONSTRUCTION COMPANY,
Appellant.

St. Louis Court of Appeals, February 3, 1914.

1. **CORPORATIONS: Employment of Physicians: Authority of Officers.** Where the foreman of a corporation informed the general manager over the telephone that an employee had been injured and that he had called in three physicians to treat the injury, and the general manager, in the presence of, and after consulting with, the president, instructed the foreman to employ competent physicians to perform an operation on, and attend and care for, the employee, the employment of the physicians was authorized, and the corporation was liable for the value of their services, since, whether or not the general manager had authority to authorize the employment of the physicians, the president undoubtedly had such authority.

2. **TRIAL PRACTICE: Conflicting Evidence: Question for Jury.** Where the evidence is conflicting, the question is for the jury, it being within their province to determine the questions of the credibility of the witnesses and the weight to be given to their testimony.

3. **EVIDENCE: Offers of Compromise or Settlement: Admissibility.** In an action by physicians to recover for the value of services in treating an injured employee of defendant corporation, it was not error to refuse to strike out, on defendant's motion, a statement made by the employee, drawn from him on cross-examination by defendant's counsel, that defendant's general manager offered to compromise witness' claim for injuries, and stated that the company would pay the doctors $100 for their services, since it did not appear that witness was representing the physicians at the time the offer was made, nor that a treaty of compromise was pending, concerning the subject-matter involved in the physicians' suit.

4. ———: ———: ———. The law protects confidential overtures of pacification, and any other offers between litigating parties, expressly stated to be without prejudice, are excluded from evidence on the ground of public policy.

Appeal from St. Francois Circuit Court.—*Hon. Peter H. Huck,* Judge.

AFFIRMED.

*Benj. H. Marbury* for appellant.

(1) The foreman of Missouri Granite and Construction Company could not make it liable for the services of these surgeons, in the absence of evidence that its foreman had been authorized by it to summon medical aid in the case of emergency. Meisenback v. Company, 45 Mo. App. 232; Weinsberg v. Company, 135 Mo. App. 564; Jesserick v. Walruff, 51 Mo. App. 565; Morrell v. Lawrence, 203 Mo. 363. (2) The law favors compromises and settlements, and when parties in good faith make such offers, but fail to effect settlement, the evidence of such offers of compromise was incompetent and the trial court committed material error in allowing evidence in this case as to an offer of compromise. Hilburn v. Ins. Co., 140 Mo. App. 363. The rule excluding offers of compromise is stated by Greenleaf, sec. 192, ''That confidential overtures of pacification and any other offers or proposition between litigating parties, expressly stated to be without prejudice are excluded on grounds of public policy.'' Moore v. Gans, 113 Mo. 98; Mill Co. v. Ins. Co., 59 Mo. App. 207; Gorham v. Auerswald, 59 Mo. App. 77; Fink v. Ins. Co., 60 Mo. App. 677; Railroad v. McGrew, 104 Mo. 298; Railroad v. Eby, 152 Mo. 606; Cullen v. Ins. Co., 126 Mo. App. 424.

*Edward D. Anthony* and *David M. Tesreau* for respondent.

The so-called attempt at compromise was not made under the faith of a pending treaty. Respondent did not take part. Appellant was endeavoring to make a settlement through a third party, without the consent or knowledge of respondent. Hilburn v. Phoenix Ins. Co., 140 Mo. App. 355.

NORTONI, J.—This is a suit on an account for the services of three physicians and surgeons. Plaintiff recovered and defendant prosecutes the appeal.

It appears that defendant, an incorporated company, owns and operates a stone quarry in St. Francois county. Theodore Anderson, who was in its employ at the quarry, was severely injured, as the result of an explosion, so as to occasion the amputation of both of his hands. Defendant's president, Gottlieb Eyerman, Jr., was in St. Louis at the time, as was also A. H. Schmalz, its secretary, treasurer and general manager. James Nossit, defendant's foreman, was in charge of the work at the quarry in St. Francois county at the time Anderson received his injury, and immediately took him to the office of Dr. Shannon for treatment. Thereupon Dr. Shannon, with the consent and acquiescence of Nossit, called in Dr. Renfro to assist in caring for the injured man. The injury was a serious one to both arms, and it was obvious that an extensive operation was required. Neither Dr. Shannon nor Dr. Renfro was prepared to undertake the operation, for, it is said, they did not possess the necessary instruments, and Nossit thereupon sent a telephone message to plaintiff, Dr. Newberry, at Fredericktown, to come at once and undertake it. Plaintiff inquired concerning the matter of compensation for his services and Nossit instructed that the company would settle the bill. Immediately Nossit called up Mr. Schmalz, secretary, treasurer and general manager of defendant company, at St. Louis, over the long distance telephone, and informed him of the injury to Anderson, its serious character, and the fact that he had called in the three physicians to care for him.

Nossit testifies that Mr. Schmalz fully approved of all that he had done in the matter, and told him to employ some one competent to operate upon Anderson, and to have the "local physicians" treat and care for the patient and that Mr. Schmalz further said:

"After you get through with him, if you and his folks and the physicians decide to bring him to St. Louis, bring him on the first train, in the morning, and I will meet him." Nossit says he informed Mr. Schmalz over the telephone that he then had the patient at Dr. Shannon's office in the care of that physician and Dr. Renfro, and that he had called plaintiff, Dr. Newberry, to come and perform the operation and that Dr. Newberry was on the road in answer to his request. It appears from the testimony of Mr. Schmalz that he was in company with Mr. Eyerman, the president, when the telephone call came and that he consulted him thereabout; that he and Mr. Eyerman concluded it was best to bring Anderson to St. Louis and have him treated and attended to in the city at one of the hospitals. Mr. Schmalz said he so instructed the foreman, Nossit, over the telephone at the time, and told him to bring the patient on the morning train for medical and surgical care in the hospital in the city. About the same time, Mr. Schmalz called up the Mullanphy Hospital over the telephone and arranged for a room for Anderson, and he went to the Union Station the following morning with a view of meeting Nossit and the patient. Schmalz says he intended to transport the injured man to the hospital in an ambulance and have him cared for there. Dr. Renfro and Dr. Shannon assigned their accounts to Dr. Newberry and he prosecutes the suit against defendant in three separate counts—one on the demand of each physician on the contract of employment made with Nossit, representing the company.

It is insisted the court should have directed a verdict for defendant because Nossit was without authority to employ physicians, but it is obvious the argument is fallacious. Though it may be that Nossit possessed no authority to employ physicians in virtue of his position as foreman, it appears that he was fully authorized at the time by the general manager who

consulted the president of the company and received his approval thereabout. Both Schmalz and Eyerman testified that Schmalz consulted Eyerman upon receiving the telephone call from Nossit and that Schmalz told Nossit by telephone in the presence of Eyerman to bring the injured man to St. Louis after the local physicians had cared for him. From this it appears beyond question that Nossit communicated the fact of the injury to the general manager and through him to the president of the company, before Dr. Newberry had arrived on the scene, for he had some distance to travel from Fredericktown. It is true both the general manager and president of the company say they intended no more than that temporary treatment should be given by the local physicians, and arranged for permanent treatment at St. Louis, but, of course, this permanent treatment so contemplated would have been at the expense of the company, as seems to be admitted. But be this as it may, the testimony of Nossit is clear that in this conversation with Schmalz over the telephone, during which Eyerman stood by the side of Schmalz, Schmalz instructed him to the effect that he should employ some competent physicians to perform the operation and have the physicians attend and care for the patient, and afterwards, if the parties so chose, bring Anderson to St. Louis. The evidence shows beyond question that the physicians intended to charge the company, and the evidence of Nossit is abundant that he contracted for the company with full authority from Eyerman, whom Schmalz consulted. Obviously this is sufficient. Whatever may be said concerning the authority of a general manager of the company to employ a physician to treat one injured in the quarry, and we believe it to be abundant, no one can doubt the authority of the president in that behalf. The question is not even a debatable one. [See Weinsberg v. St. Louis Cordage Co., 135 Mo. App.

553, 116 S. W. 461; Evans v. Marion Min. Co., 100 Mo. App. 670, 75 S. W. 178.]

The mere fact that there is a discrepancy between the testimony of Nossit and that of the general manager and president as to whether or not the patient was to be brought to St. Louis for treatment after temporary relief was afforded, avails nothing here. This was matter for the jury alone, for it resides with that tribunal to give judgment upon the credibility of the witnesses and the weight and value to be accorded to their testimony. According to the evidence of Nossit, he was fully empowered to employ the physician as he did, to administer not only temporary relief, but for the subsequent treatment, and the jury so found the fact to be.

Theodore Anderson, the injured employee, testified on the part of plaintiff, and it appears that defendant's counsel during cross-examination drew from this witness that Mr. Schmalz had offered him $500 by way of a compromise of his claim against the company because of the personal injury received, and said, too, that he would pay the doctors $100·for their services. The witness said the offer was made in connection with an offer to compromise his claim against the company for damages. Defendant's counsel then objected to it and moved that it be stricken from the record, for that it appeared to be an offer made in connection with a proposition of compromise. The court overruled the objection, and it is urged here this was error. This testimony was not incompetent, for it does not appear that any treaty of compromise was pending with respect to the claim here in suit. Nothing in the record suggests that Anderson, the injured man, represented any one of the physicians whose claims are in suit here, and it is clear he was not their agent to effect any compromise for them. It is clear, too, as before said, that there was no treaty of compromise pending concerning the subject-matter of the instant

suit. Moreover, there is no intimation in the record that the suggestion made in connection with an effort to compromise Anderson's claim was confidential or was without prejudice. The law protects confidential overtures of pacification, and any other offers or propositions between litigating parties expressly stated to be without prejudice are excluded from evidence on grounds of public policy. Mr. Greenleaf says, in his work on Evidence (14 Ed.), sec. 192, "But, in order to exclude distinct admissions of facts, it must appear either that they were expressly made without prejudice, or, at least, that they were made under the faith of a pending treaty, and into which the party might have been led by the confidence of a compromise taking place." It appearing that there was no treaty of compromise pending with respect to the claims of the doctors and that, in any event, Anderson, to whom the seeming admission of a liability was made, in no wise represented the physicians, the evidence was properly received. [See Moore v. Gaus & Sons Mfg. Co., 113 Mo. 98, 111, 112, 20 S. W. 975.]

What has been said disposes of all of the questions raised in the brief. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.