E. S. SHORTRIDGE, Respondent, v. CHAS. H. RAIF-FEISEN, Appellant.

Kansas City Court of Appeals.   June 14, 1920-

1. **Pleading: Justice Courts: Statement.** A statement filed in a justice court to recover a real estate broker's commission which gives the name of the debtor, the name of the creditor, the amount of the debt claimed and designates the real estate on which the commission is claimed, states a cause of action.

2. **Real Estate Brokers: Procuring Cause of Sale: Failure to Demur to Evidence.** The failure to interpose a demurrer to the evidence and the joinder with plaintiff in requesting instructors is an admission that there is evidence upon which to go to the jury.

3. ————: **General or Special Contract: Jury Question.** Where the evidence was conflicting concerning the nature of the plaintiff's contract with the defendant as to whether it was a general contract or a limited one to sell at a minimum figure, it was for the jury to determine the nature of the contract.

4. ————: **Procuring Cause of Sale: Evidence Conclusion of witness.** It was proper to exclude a question directed to the purchaser of defendant's house at to whether the plaintiff's efforts "had anything to do with you buying the property" as that was the question for the jury to decide; and it called for a conclusion on the part of the witness that if he did not rely upon the plaintiff's judgment the plaintiff's efforts did not result in effecting the sale.

5. ————: **Nature of Contract: Instructions.** Since the evidence as to the nature of the contract plaintiff had with the defendant was conflicting, it was error to submit the case on instructions which assumed the contract to be as plaintiff contended and assumed that he had performed it.

Appeal from Pettis Circuit Court.—*Hon. Hopkins B. Shain*, Judge.

REVERSED AND REMANDED.

*C. C. Kelly* and *Lamm, Bohling & Lamm* for appellant.

*W. W. Blain* and *A. L. Shortridge* for respondent.

TRIMBLE, J.—This action originated in a justice court and is a suit by a real estate broker for his commission. The case was tried anew in the circuit court on appeal and the jury returned a verdict for plaintiff. The defendant has appealed.

The statement filed with the justice, and upon which the case was tried, is, for the first time, attacked in this court as being insufficient. It reads as follows:

"Sedalia, Missouri, Jan. 4, 1919. Charles H. Raiffeisen to E. S. Shortridge Dr. to Commission of 2½ per cent on real estate valued at $9,500 located at No. 1009 West 3rd St., Sedalia, Mo. $237.50"

In view of the liberality of construction and requirement accorded pleadings in a justice court, we are unwilling to hold the above to be so defective as to state no cause of action at all. It gives the names of the debtor and the plaintiff or creditor, the amount of the debt claimed, the rate per cent of the debt claimed as a commission and designates the real estate on which the commission is claimed. Indeed, the words "sale of" after the word "on" and before the words "Real Estate" are all that is lacking to make the statement complete in every particular and free from the most technical criticism. We think the statement is sufficient to inform the defendant of the nature of the action and to bar recovery in another suit. When it meets these requirements, it will not be held to be fatally defective so as not to support the judgment. [Jarrett v. Mohan, 142 Mo. App. 29, 23; Smith v. Truitt, 107 Mo. App. 1, 7.] However, even if it be deemed defective, it could on a remand be amended. [Rechnitzer v. Vogelsang, 117 Mo. App. 148, 152.] And since the judgment will have to be reversed and the cause remanded for a reason hereinafter stated, the plaintiff can amend it by inserting the omitted words showing it was for a sale of the real estate.

The facts of this case make it somewhat unusual and a little out of the ordinary line of cases of this character This is not a case where the broker *finds* a purchaser or introduces him to the owner, but is one where the owner and the purchaser-to-be have been negotiating with each other over a purchase of the property but their negotiations have not been successful, and the broker comes into the affair and exerts his efforts to accomplish or bring about a sale, and after he has exerted his efforts and has repeatedly gone back and forth between them, and finally on the day the sale was made, telephones the purchaser to come into town on that day and the purchaser in response

to the telephone, comes, but instead of going to the broker, meets with the owner and closes the deal without him.

Defendant insists that this was a *special* contract, that plaintiff was employed to effect a sale at a certain price in cash, and that as the sale was not made at that price or on the terms specified, the plaintiff did not perform his contract, and hence is not entitled to recover; also that there is no evidence in the case tending to show that plaintiff's efforts were the procuring cause of the sale. With reference to this, it may not be amiss to observe that no demurrer to the evidence was interposed, and defendant joined with plaintiff in asking the court to instruct upon the issues, thereby admitting that there was evidence upon which to go to the jury. [Kenefick Hammond Co. v. Norwich Ins. Society, 205 Mo. 294, 312; Hansen v. Boyd, 161 U. S. 397, 402; Hartford Ins. Co. v. Ansell, 144 U. S. 439, 451.]

We are not in a position to say that *conclusively* plaintiff had only a limited contract and, therefore, cannot recover because he did not perform the terms thereof. The evidence is that when plaintiff first spoke to defendant about selling the house for him, he, plaintiff, told defendant that Denny was the man he had in view as a prospective purchaser. Defendant said, "There is nothing to him. He wont buy a house. He has been talking about buying a house for a long while and you can't sell him the house. You can't sell him any house." Plaintiff asserted that he could sell him a house and that Denny could be induced to buy defendant's. Whereupon defendant said. "Well, go ahead and sell it to him. Go ahead and sell it to him. I will pay you a commission." And plaintiff said. "All right, I will try him."

The price defendant had been holding his house at and the price he named to plaintiff was $10,000, but later the plaintiff informed him that Denny would buy the house if defendant could take a little less than that, and defendant promised to go over his bills to see what expense the house had been to him and he would then report. He did so and told plaintiff he would take $9,500

but couldn't take any less that that and pay a commission. Plaintiff saw Denny repeatedly about the matter, and the latter came several times to plaintiff's office about it, but Denny said he was not yet ready to make an offer as he had matters on the farm to shape up but that he would in about three weeks. In the meantime, at Denny's suggestion, plaintiff investigated the cost of the house and reported to Denny what he had learned from the contractor who built it. After seeing Denny three or four times, Denny proposed to put in a lot he owned at part pay on the house at a valuation of $2000. This plaintiff communicated to defendant who refused to take the lot. Plaintiff continued in his efforts to sell the house to Denny.

At some time during the transactions, Denny made a deal whereby he thought he had purchased another house of one Cadle, but in some way this deal fell through. Defendant seems to think that the record conclusively shows that plaintiff did not come into the matter until after the Cadle deal fell through, but manifestly there is evidence from which it might be found that plaintiff was talking to Denny and trying to get him to make an offer on Defendant's house before this. And plaintiff obtained a promise from Denny that if the Cadle deal did fall through he would make an offer on the defendant's house. Plaintiff kept track of the Cadle deal and as soon as it was off he called Denny over the telephone and made an appointment with him to come in that day and make the deal for defendant's house. Denny did come in but, although plaintiff waited for him at his office, Denny did not come to plaintiff but got with defendant and the two closed the deal, defendant taking the lot Denny had theretofore wanted to put in on a valuation of $2000, at a valuation of $1500 and paying $7500 in cash. Thus the price was reduced from $9500 to $9000 only by treating Denny's lot as having a valuation of $1500 instead of $2000, and there was evidence that defendant testified in the justice court that the consideration for the house in the deal made was $9500.

We cannot say as a matter of law that a special contract defeats plaintiff's cause of action. In the first place, according to the evidence in plaintiff's favor, there was no such limitation on plaintiff's right to a commission when the contract was made and plaintiff's efforts began. In the next place, no limit of time was placed on plaintiff to effect a sale, and he had a reasonable time in which to do so; and while he was in the final act of accomplishing a sale, the defendant, without notice to plaintiff, got together with the purchaser and closed the deal. [Holland v. Vinson, 124 Mo. App. 417.] There is other evidence in the record from which the jury could find that even if defendant did tell plaintiff he would not pay a commision unless he sold the property for $9500 cash, yet defendant allowed plaintiff to continue in his efforts to sell the property at less than those terms; and still other evidence that defendant listed the property with plaintiff under a general contract to pay a commission if he sold the property, though the defendant was under the impression that he would not legally be bound to pay any commission unless the property was sold for $9500. In other words, it is a question for the jury to say whether the contract plaintiff had was a limited or general contract.

With reference to the claim that there was no evidence from which the jury could say plaintiff's efforts were the procuring cause of the sale, we are of the opinion that there was. The jury could reasonably find that had it not been for plaintiff's efforts the sale would not have been effected and that plaintiff's exertions were the procuring cause of the sale.

The question asked of Denny whether the efforts of the broker "had anything to do with you buying the property?" was, we think, properly excluded. He was allowed to detail all the facts and to tell what was done. The question whether the broker's efforts "had anything to do" with the sale left not only it to the witness to decide whether such efforts were effective in bringing about a sale, the question the jury was to pass upon, but also

allowed the witness to draw the conclusion that if he did not rely on the broker's judgment in making the purchase, the broker's efforts did not result in effecting the sale. The question allowed the witness to draw a conclusion in reference to the very question the jury were called to pass upon under the instructions of the court. It is not like showing the state of a man's mind prior to plaintiff's efforts by declarations made by such men at the time the state of mind was desired to be shown. [Folks v. Burnett, 47 Mo. App. 564, 566.]

We think, however, that error calling for a reversal and a remanding of the cause for a new trial was committed in the way plaintiff's case was submitted in his instructions.

As heretofore stated, it must be borne in mind that this is not the usual controversy of a broker and landowner over a commission for procuring or finding a purchaser. Here, the owner and purchaser-to-be had been "dickering" with one another for two years, and each knew the other's terms but would not agree thereon. In this situation plaintiff asked defendant to be allowed to take a hand. According to plaintiff's theory this was granted and he was given a general contract to sell the property, or, if it was limited as to price, it became unlimited thereafter and was so treated by them and that it was unlimited both as to price and as to purchaser. Defendant's evidence tends to show, however, that he refused to give plaintiff a contract to sell to Denny since he already had been on the string and could himself do better with him than any agent could; also, that the contract he made with plaintiff was to pay a commission only in case plaintiff found a purchaser who would give $9500 cash for the property. With reference to this last, plaintiff himself, in one place in his testimony, says defendant said "I will take nine thousand five hundred dollars for the house and pay a commission. I can't take any less that that and pay a commission." So that the evidence is clearly in such shape that plaintiff's right to recover was affected by two possible conditions, one that

he must sell to some one other than Denny, and the other that he must sell for $9500 or he would not be entitled to a commission. Whether either one or both of these conditions were a part of the contract was a question for the jury. It was not conceded that defendant knew plaintiff was still trying to sell to Denny and knowingly interfered and took the matter out of his hands. Now the error in plaintiff's instructions is that they assume that the contract was a general one as to price and tell the jury plaintiff is entitled to recover and the finding will be for him if the defendant "employed plaintiff to sell the property" and if his efforts were "the procuring cause that resulted in the deal being made" *unless* the contract the plaintiff was to sell to some one other than Denny; and they thus assume that the deal made was in accordance with the terms of the contract plaintiff had.

But instructions which direct a verdict should not omit any of the issues which are a necessary part of plaintiffs case; and what was the contract plaintiff had, and whether he had fully performed it or not, were certainly questions which contain the very heart of his case. [Westerman v. Pear Investment Co., 197 Mo. App. 278, 284; Young v. Cooperage Works, 259 Mo. 215; Jennings & Son v. Overholt, 186 Mo. App. 505, 511-12.] Plaintiff's instructions contained one of the conditions which had to be negatived before he could recover, but omitted all reference to the other and that other had reference to the two vital and essential things to his recovery, namely, the nature of the contract he had and whether he had performed it.

The judgment is reversed and the cause is remanded for a new trial. All concur.