[No. 18130.   Department One.   December 7, 1923.]

PARK WEED WILLIS, *Appellant,* v. MACDOUGALL & SOUTHWICK, *Respondent.*[1]

CORPORATIONS (155, 169)—REPRESENTATION—AUTHORITY TO REPRESENT CORPORATION—EVIDENCE AS TO AUTHORITY. Where the president and general manager of a corporation had, in large measure, control of all its business transactions, it is responsible upon his agreement to pay the hospital and medical bills of an employee, unless it is affirmatively shown that his acts were unauthorized.

SAME (155, 169). Whether the denial by the general manager of a corporation that he had authority to agree to pay the hospital and medical bills of an employee overcomes the presumption of authority, is a question for the jury, where the company did pay without question several such bills as he agreed it would.

FRAUDS, STATUTE OF (4)—DEBT OF ANOTHER—ORIGINAL PROMISE. A direct promise, by the general manager of a corporation, to pay the hospital and medical bills of an employee is not within the statute of frauds.

PHYSICIANS AND SURGEONS (14)—ACTION FOR SERVICES—EVIDENCE. A judgment for $750 for the services of a physician cannot be objected to because there was no attempt to segregate the amount due for three separate attendances and treatment.

Appeal from a judgment of the superior court for King county, Truax, J., entered April 4, 1923, dismissing an action on contract, upon granting a nonsuit, after a trial before a jury.   Reversed.

*Poe, Falknor & Falknor,* for appellant.
*Roberts & Skeel,* for respondent.

HOLCOMB, J.—Appellant, a physician and surgeon, sued respondent for the reasonable value of certain surgical operations performed by him upon one of respondent's employees, alleging the value of the services to be reasonably worth $750.   The case of appellant was to the effect that one Carpenter, president

[1]Reported in 220 Pac. 759.

and general manager of respondent, gave appellant a direct, original and independent promise to pay for appellant's services. The operations performed were of a serious nature, complicated with diabetes, and the treatment and care extended for about a year. Appellant stated that Carpenter told him to put the employee of respondent in a room instead of a ward of the Seattle General Hospital, and that respondent company would pay the costs and charges therefor, and would pay the medical and surgical bills. Appellant employed Doctors Gross and Peacock to assist him in various operations, whose charges, and the charges of the Seattle General Hospital were, by instruction of appellant, presented to, and were paid by respondent company. Carpenter had been president and manager and one of the directors of the company for a period of about six years. A majority of the board of five trustees did not reside in Seattle. Two of them resided in New York, and one in Denver. According to the testimony of appellant, Carpenter himself went to the office of appellant and told him that the company would pay all the bills, including doctors' bills and hospital bills and everything connected with the illness of the employee, Stewart. Carpenter admits that he went personally to the office of appellant and told appellant to remove Stewart from the ward in the hospital to a private room, and that he, Carpenter, would take care of the hospital expenses. Carpenter denied that he promised that the company would pay the hospital charges or that the company would pay the medical and surgical expenses. The company did, however, pay the hospital bills, with the exception of $45, and paid the medical bills of Doctors Gross, Peacock, and another doctor, without protest or objection, shortly after they were presented to it. After the passage of about a

year and a half, Carpenter contended that he did not have authority to pay appellant's bill, but would have to take the matter up with other officers of the company in New York.

It was shown, and admitted by Carpenter, that, prior to the incurring of the bills in question, he had obtained authority to carry on the payrolls, as pensioners, certain employees who had grown old in the service of the company, and that Stewart was one of them. The trial judge sustained a challenge to the sufficiency of the evidence, took the case from the jury, and entered a judgment of dismissal.

Respondent contends, which was doubtless the theory adopted by the trial court:

First, that on the facts the doctor failed to sustain the burden. That would be a question of fact for the jury to determine.

Second, that there was no evidence to show authority on the part of Carpenter, that he expressly denied it, and no such authority can be implied. That has been answered contrary to the contention of respondent very early in the history of this court. In *Carrigan v. Port Crescent Improvement Co.*, 6 Wash. 590, 34 Pac. 148, it was decided that, "when a corporation names some person as its manager, and as such allows him in a large measure to control all its business transactions, it must be held responsible for the acts of such manager in the name of the company until it has been affirmatively shown that such acts were unauthorized." The above decision was followed in *Citizens' National Bank of Tacoma v. Wintler*, 14 Wash. 558, 45 Pac. 38, 53 Am. St. 890, and again approved in *Parr v. Pacific Storage Warehouse*, 124 Wash. 26, 213 Pac. 677.

But it is further contended by respondent that, when Carpenter denied any such authority to employ a

physician, then it was affirmatively shown that he had no such authority, and that therefore the presumption of law under the foregoing decisions disappeared.

It is true there is no contradiction of the testimony of Carpenter that he had no such authority except the circumstances that, while he said he had no such authority, the bills of the other physicians and the hospital were paid as direct obligations of the company, about three years before trial, and that as Carpenter said, his acts had not been questioned. Hence, the question as to whether or not Carpenter's bare denials were sufficient to overcome the presumption under our decisions above quoted and cited, remains a question of fact for the jury.

It is true that the general rule is that,

"Where a person requests the performance of a service, and the request is complied with and the service performed, the law raises an implied promise to pay the reasonable value of the service,"

and that the general rule is further that,

"This implication does not obtain, where one person requests a physician to perform services for a patient, unless the relation of the person making the request to the patient is such as raises a legal obligation on his part to call in a physician and pay for the service." *Meisenbach v. Southern Cooperage Co.*, 45 Mo. App. 232.

This is but a statement of the common sense rule which should obtain, for it would be an unjust and senseless rule to require a person obtaining the services of a physician upon a sudden emergency of injury or sickness of another, to be impliedly liable for the services. It is also a common sense rule to imply liability on the part of a person having such relation to a patient as raises a legal obligation on his part to call

in a physician and pay for the services. But this rule has nothing to do with the question now before us, as to whether the corporation as such, through its general manager and executive officer could bind itself expressly and independently, to pay for the service of a physician, or a hospital, or a lawyer, or any service whatever for its employee.

The direct promise to pay, if made by the general manager, as testified by appellant, was not within the statute of frauds. *Burns v. Bradford-Kennedy Lumber Co.,* 61 Wash. 276, 112 Pac. 359; *Goldie-Klenert Distributing Co. v. Bothwell,* 67 Wash. 264, 121 Pac. 60, Ann. Cas. 1913D 849; *Lovell v. Haye,* 85 Wash. 109, 147 Pac. 632. The question, therefore, as to whether it was the obligation of the company is a question of authority and power on the part of Carpenter, the general manager, to bind the company. That question was not concluded by the denials of Carpenter as to his authority. His authority would not be legally determined either by his own assertions or denials thereof. It does not fall within the rule of the case of *Parr v. Pacific Storage Warehouse, supra,* where the *prima facie* case made by respondent was overcome by conclusive testimony as to lack of authority on the part of one holding the position of manager of the corporation to execute and deliver a promissory note. In that case it was not rested upon denial of authority by the manager, but the stockholders and other officers of the corporation showed and testified to the lack of authority of the manager to execute such note. Such testimony was uncontradicted. It therefore made a conclusive case as to lack of authority of the manager. That is far from true in this case. See *Ward v. Samuels & Bro.,* 37 R. I. 438, 93 Atl. 649. Respondent makes copious quotations from the above case which, upon being

examined, are found to be quotations from the dissenting opinion of Vincent, J. We realize that there are many cases holding that the manager of a business corporation has no implied authority to furnish medical aid and assistance to a servant who has been injured outside the line of his duties, or to a servant not injured and no emergency existing for the employment of a physician's services. We are convinced, however, that under the presumed authority of a general manager under our decisions heretofore cited, it is here a question of fact to be decided by a jury. Moreover, this is in line with the undoubted modern tendency for all kinds of corporations, including mercantile, to engage in many lines of activity for the betterment and added contentment of employees, in addition to their strict business activities, all of which are usually managed by the ordinary business manager.

Third, It is contended by respondent that if any promises were made, they were promises of Carpenter personally and not promises of the corporation, and were, therefore, within the statute of frauds.

What has been said heretofore has disposed of this question as it was a direct promise to answer for the debt.

Fourth, It is also contended that the judgment is right because three separate treatments and attendances on the part of appellant were shown, and no attempt was made to segregate. He simply charged $750 for the whole and appellant claims that he only saw Carpenter once.

Appellant's testimony simply covers the whole treatment, service and engagement, if his testimony is to be believed. There was, therefore, no necessity to segregate for each attendance and treatment.

We conclude that the trial court erred in taking the case from the jury, and the judgment is therefore reversed.

MAIN, C. J., TOLMAN, PARKER, and MACKINTOSH, JJ., concur.