DR. SOLON CAMERON, RESPONDENT, v. ELECTRIC HOUSEHOLD STORES, INC., D/B AS THOR ELECTRIC SHOP, APPELLANT.—78 S. W. (2d) 548.

St. Louis Court of Appeals. Opinion filed February 5, 1935.

Appellant's Motion for Rehearing Overruled February 19, 1935.

Writ of Certiorari Quashed by Supreme Court December 18, 1935 (89 S. W. (2d) 28).

890

*Foristel, Mudd, Blair & Habenicht* for respondent.

*Louis Lowell Hicks* and *Vogel & Field* for appellant.

SUTTON, C.—This action was commenced before a justice of the peace in the City of St. Louis. The statement filed with the justice alleges that the defendant is indebted to him for professional services rendered Richard R. Callahan at the special instance and request of defendant between February 3 and April 5, 1930, in the sum of $450, and asks judgment therefor.

The trial in the justice court resulted in a judgment in favor of plaintiff for $450. From this judgment defendant appealed to the Circuit Court.

The trial anew in the Circuit Court, with a jury, resulted in a verdict and judgment for plaintiff for $300. From this judgment defendant has appealed to this court.

Defendant assigns error here for the refusal of its instruction in the nature of a demurrer to the evidence.

Defendant is a corporation engaged in selling electrical household appliances and equipment, with its home office located in Chicago. Defendant operated its business through many local or branch stores in many states, one of which was located in St. Louis. Richard Callahan was in the employ of defendant in charge of the St. Louis branch as a branch manager and had a large number of salesmen under him. Joseph M. Dorband was defendant's vice-president and general manager.

On February 3, 1930, Callahan became suddenly ill with lobar pneumonia. He had just been through a sales campaign and was complaining for several days before he was stricken with pneumonia. He was a stranger in St. Louis, and was without funds to defray the expenses of his illness. According to the evidence given on behalf of the plaintiff, Joseph A. Broderick, who was in the employ of defendant at its local branch in St. Louis, called up Mr. Dorband, at the home office of defendant in Chicago, when Mr. Callahan became ill with pneumonia, and told Mr. Dorband of Mr. Callahan's condition, and asked Mr. Dorband what was to be done. Mr. Dorband instructed Mr. Broderick to get a physician immediately, and take charge of the store, and said that he would be in St. Louis in a few days. Mr. Broderick then employed plaintiff to attend Mr. Callahan. Mr. Dorband came to St. Louis in a few days and called on Mr. Broderick. He told Mr. Broderick his purpose in coming to St. Louis was to look the situation over and see Mr. Callahan's condition. Mr. Broderick told Mr. Dorband that Mr. Callahan was

desperately ill. Mr. Dorband told Mr. Broderick to pay whatever necessary bills that were incurred in Callahan's illness out of the petty cash fund and send the bills to Chicago with his budget statements. Mr. Broderick and Mr. Dorband then went to Mr. Callahan's home, and there met the plaintiff. Plaintiff expressed a desire to have an understanding respecting the payment of his bill for his services, and Mr. Dorband said to plaintiff: "Doctor, this company will pay your bill when you render it, and any expense incurred by you in Mr. Callahan's illness, we will take care of." Plaintiff continued his attendance upon Mr. Callahan until he recovered from his illness.

Mr. Dorband, testifying on behalf of defendant, admitted that he went to Mr. Callahan's home with Mr. Broderick, but denied that he saw the plaintiff there, or that he had ever talked to him, or that he gave any authority or consent for medical attention in regard to Mr. Callahan's illness, and stated that he had no authority to bind the company for medical attention. No by-law or record of the corporation, prescribing or limiting his authority as general manager, was shown.

Defendant contends that its instruction in the nature of a demurrer to the evidence should have been given because there was no evidence to show that defendant's general manager had any authority to bind the defendant to pay for medical services for an employee.

The decisions in other jurisdictions, respecting the authority or not of officers and agents of a corporation, other than a railroad corporation, to charge the corporation with the employment of physicians and surgeons to attend upon sick or injured employees, are in hopeless confusion, and it can serve no useful purpose to review them here. Suffice it to say that there are cases holding that officers and agents having general powers, and under some circumstances subordinate agents, have implied authority to so charge the corporation, while, on the other hand, there are cases holding that even officers and agents having general powers have no such authority. The cases in our own State adopt the former view. [Greensfelder v. Witte Hardware Co., 189 Mo. App. 576, 175 S. W. 275; Newberry v. Missouri Granite & Const. Co., 180 Mo. App. 672, 163 S. W. 570; Ghio v. Schaper Bros. Merc. Co., 180 Mo. App. 686, 163 S. W. 551; Weinsberg v. St. Louis Cordage Co., 135 Mo. App. 553, 116 S. W. 461; Evans v. Marion Mining Co., 100 Mo. App. 670, 75 S. W. 178; Hasler v. Ozark Land & Lumber Co., 101 Mo. App. 136, 74 S. W. 465.]

Some of the cases, in other jurisdictions, hold that authority on the part of an officer or agent to charge a corporation for medical services rendered a sick or injured servant will be implied only in case the sickness or injury of the servant occurred in the perform-

ance of his duties as such servant. The rationale of these cases appears to be that the interest which the corporation has in lessening the damages it may have to pay in case of a possible liability for such sickness or injury, by effecting a speedy cure of the sick or injured servant, is the sole basis for the implication of authority on the part of an officer or agent to employ a physician or surgeon to treat the servant, and that, therefore, unless the sickness or injury of the servant occurred in the performance of his duties, there is no basis for such implication of authority. Other cases, however, with sound reasoning, we think, find a basis for the implication of authority in the interest the corporation has in the speedy recovery of the servant, though the sickness or injury of the servant may have occurred outside the line of his duties and under circumstances involving no possible liability on the part of the corporation for such sickness or injury, particularly where the servant is specially trained or skilled in the particular branch of service in which he is engaged, so that his disability will necessarily, to some extent, retard or interfere with the operation of the business of the corporation, and thereby cause it to suffer some, and maybe serious, pecuniary loss. In such case the company clearly has a pecuniary interest in the speedy recovery of the servant and his early resumption of the duties for which he has been specially trained.

In Hasler v. Ozark Land & Lumber Co., *supra,* it was held that the vice-president and general manager of the defendant had authority to charge the defendant with the employment of a physician to attend two employees during their affliction with smallpox. In that case, it is true, the plaintiff pleaded that defendant had created a hospital fund by contributions from its employees for the purpose of employing and paying a physician for medical attendance for such employees as might require such attendance. But there was no proof of such allegation.

In the other cases above cited it was held that officers and agents having general powers were authorized to charge the corporate employers with the employment of physicians and surgeons to attend upon injured employees.

In Willis v. MacDougall & Southwick (Wash.), 220 Pac. 759, the plaintiff, a physician and surgeon, sued defendant for the reasonable value of surgical operations performed by him upon one of defendant's employees. The case of plaintiff was to the effect that the president and general manager of defendant employed plaintiff and promised him that defendant would pay him for his services. The operations performed were of a serious nature, complicated with diabetes, and the treatment and care extended over a period of about a year.

. The court, in disposing of that case, said:

"We realize that there are many cases holding that the manager of a business corporation has no implied authority to furnish medical aid and assistance to a servant who has been injured outside the line of his duties, or to a servant not injured and no emergency existing for the employment of a physician's services. We are convinced, however, that under the presumed authority of a general manager under our decisions heretofore cited, it is here a question of fact to be decided by a jury. Moreover, this is in line with the undoubted modern tendency for all kinds of corporations, including mercantile, to engage in many lines of activity for the betterment and added contentment of employees, in addition to their strict business activities, all of which are usually managed by the ordinary business manager."

We think the circumstances shown in the instant case afford ample grounds for presuming that Dorband, as general manager of defendant, had authority to charge defendant with the employment of a physician to treat the manager of its St. Louis branch, who was suddenly stricken and became desparately ill, among strangers, without adequate funds for the employment of necessary medical attention. Callahan held a responsible position of no little importance in the conduct and operation of defendant's business. Presumably he was specially trained for this position and was possessed of a knowledge of defendant's business in St. Louis not possessed by any other employee. So that defendant had a direct pecuniary interest in his speedy recovery and his early return to his work.

Plaintiff unquestionably made out a submissible case for the jury. The question as to whether or not the general manager was authorized to bind defendant for medical services was not concluded by his bare denial. Notwithstanding his denial, the question was still for the jury. [Willis v. MacDougall & Southwick, supra; Monsanto Chemical Works v. American Zinc, Lead & Smelting Co. (Mo.), 253 S. W. 1006, l. c. 1011; Robinson v. Moark-Nemo Consol. Min. Co., 178 Mo. App. 531, l. c. 539, 153 S. W. 885; Montague v. Washington Fidelity Nat. Ind. Co. (Mo. App.), 72 S. W. (2d) 804; Crossley v. Summit Lumber Co. (Mo. App.), 187 S. W. 113; Rosenbaum v. Gilliam, 101 Mo. App. 126, 74 S. W. 507.]

Defendant further contends that the statement filed with the justice wholly fails to state a cause of action, and is therefore fatally defective and insufficient to support the judgment. We can see no merit in this contention. In actions before justices of the peace compliance with the technical rules of good pleading is not required. It is only required that the statement be sufficient to show the nature of the demand and to operate as a bar to another action on the same demand. We think the statement here is amply sufficient to meet this requirement. [Quinn v. Stout, 31 Mo. 160; Lustig v. Cohen,

44 Mo. App. 271; Shortridge v. Raffeisen, 204 Mo. App. 166, 222 S. W. 1031; Witting v. St. Louis & San Francisco Ry. Co., 101 Mo. 631, 14 S. W. 743; Elwood v. Heinz-Young Const. Co., 183 Mo. App. 289, 166 S. W. 1076; Rundelman v. John O'Brien Boiler Works Co., 178 Mo. App. 642, 161 S. W. 609.]

Defendant assigns error upon the giving of plaintiff's instruction No. 1 in that it does not require a finding that defendant was authorized to furnish medical attention for an employee. The instruction requires the jury to find that Dorband, in the employment of plaintiff, was acting within the scope of his authority from defendant. Defendant's instruction No. 2 required the jury to find that Dorband was, in fact, authorized by defendant to employ plaintiff to give medical attention to Callahan, and that the burden of proof was on the plaintiff to show that Dorband had such authority. Defendant thus joined with plaintiff in submitting to the jury the one and only issue of fact in the case. These instructions, we think, sufficiently advised the jury respecting that issue. But if the defendant thought the instructions were too general it was at liberty to request more specific instructions. Not having done so, it is in no position to complain here.

Defendant complains of the refusal of its instruction No. 3. The instruction is drawn on a theory opposed to the views herein expressed. It directs a verdict for defendant upon a finding that plaintiff treated Callahan for an illness not resulting from injuries sustained in the course of his duties as an employee of defendant. There was no evidence that plaintiff sustained any injuries, in the course of his duties, or otherwise. The instruction, in effect, peremptorily directs a verdict for defendant. It was properly refused.

Defendant also complains of the refusal of its instruction No. 4. The instruction, aside from a clause stating a questionable abstract proposition of law, is substantially the same as defendant's given instruction No. 2. There was no prejudicial error in its refusal.

The Commissioner recommends that the judgment of the Circuit Court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the Circuit Court is accordingly affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.